FILED

1  JEFFERY J. DAAR (SBN 105536)
   jdaar@daarnewman.com
2  MICHAEL R. NEWMAN (SBN 49676)
   mnewman@daarnewman.com
3  DAAR & NEWMAN
   A Professional Law Corporation
4  865 South Figueroa Street, Suite 2300
   Los Angeles, CA 90017-2565
5  (213) 892-0999

6  Attorneys for Plaintiff
   ECODISC TECHNOLOGY AG

7

2010 FEB 19  PM 2:47

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| 11 ECODISC TECHNOLOGY AG, a corporation, | CASE NO: CV09 07875 MRP (AJWx) |
|---|---|
| 12          Plaintiffs, | FIRST SUPPLEMENTAL COMPLAINT FOR: |
| 13     vs. | |
| 14 DVD FORMAT/LOGO LICENSING CORPORATION, a corporation; and DVD FORUM, an association, | (1) VIOLATIONS OF THE SHERMAN ACT; (2) VIOLATIONS OF THE CARTWRIGHT ACT; (3) FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT; (4) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS; (5) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; (6) TRADE LIBEL; and (7) UNFAIR BUSINESS PRACTICES |
| 17          Defendants. | |
| 21 | DEMAND FOR JURY TRIAL |

25     Plaintiff EcoDisc Technology AG complains as follows:

26              **JURISDICTION AND VENUE**

27     1.    This Court has jurisdiction over the plaintiff's claims for relief arising

28  under the Sherman Act, 15 U.S.C. § 1, pursuant to 15 U.S.C. § 4, under the Lanham

-1-

DAAR & NEWMAN, PLC

1  Act, pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 and 1337.  The Court

2  has supplemental jurisdiction over the remaining claims for relief arising under

3  California law pursuant to 28 U.S.C. § 1367.

4        2.    This is also an action to recover actual and treble damages for injuries

5  resulting from defendants' violations of the antitrust laws of the United States, as

6  set forth in Title 15 of the United States Code.  Accordingly, the Court also has

7  jurisdiction of this action under 15 U.S.C. § 4 and 28 U.S.C. § 1332.

8        3.    This Court has personal jurisdiction over the defendants and venue is

9  proper in this District under 28 U.S.C. § 1392(a) and (c), in that defendants do

10  substantial business in the State of California and within this District and are

11  transacting and doing business and conducting or otherwise transacting their affairs

12  in this District, and the defendants have performed acts in furtherance of their

13  illegal and wrongful conduct as alleged herein, which have had a substantial effect

14  in this District.  Additionally, venue is proper as to the defendants, alien corporation

15  and association, under 28 U.S.C. § 1391(d).

16  **THE PARTIES**

17        4.    Plaintiff EcoDisc Technology AG ("EcoDisc AG") is, and at times

18  material was, a corporation incorporated under the laws of Switzerland, with its

19  principal place of business at Sonnhaldenstrasse 7, 6052, Hergiswil, Switzerland.

20        5.    EcoDisc AG is informed and believes and thereon alleges that

21  defendant DVD Format/Logo Licensing Corp. ("DVD FLLC") is, and at all times

22  material was, a corporation duly organized and existing under the laws of Japan,

23  with its principal place of business at Daimon Urbaniste Bldg., 6F2-3-6

24  Shibadainon Mimato-ku, Tokyo, 105-0012, Japan.

25        6.    EcoDisc AG is informed and believes and thereon alleges that, at all

26  relevant times, defendant DVD Forum is, and at all times material was, an

27  international association of businesses engaged in the research, development,

28  manufacturing, or sales related to DVD technology, with its principal place of

-2-
FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

1   business at Daimon Urbaniste Bldg., 6F2-3-6 Shibadainon Mimato-ku, Tokyo, 105-

2   0012, Japan.

## INTRODUCTION

4       7.    This action involves the wrongful and unlawful acts of defendants,

5   who are the core DVD industry organization for establishing DVD format standards

6   and the corporation that licenses these format standards and the DVD Logo, to

7   suppress new innovation -- the environmentally-friendly DVD. The defendants

8   have acted to suppress innovative technology that results in a thinner, lighter and

9   more flexible DVD – the EcoDisc -- that provides a reduction in $CO_2$ emissions by

10  approximately 52% and is recyclable. Standard DVDs have remained largely

11  unchanged since their invention. Defendants have effectively threatened all disc

12  replicators that if they make the new environmentally-friendly DVD they may no

13  longer be permitted to make standard DVDs and use the DVD logo. Defendants

14  have also placed in the marketplace false information regarding these new

15  environmentally-friendly discs.

## FACTUAL ALLEGATIONS AND BACKGROUND
## COMMON TO ALL CAUSES OF ACTION

### The DVD

21      8.    A DVD is an optical disc storage media format that can be used for

22  playback of movies with high video and sound quality, and for storing data

23  electronically. The acronym "DVD" originally was for "Digital Video Disc," but

24  had its name changed to "Digital Versatile Disc" to reflect its widespread use for

25  non-video applications.

26      9.    The introduction of DVD technology in the 1990s launched one of the

27  most successful generation of consumer products in history. According to industry

28  reports, since 1997, over 260 million DVD players and more than 10 billion DVD

-3-

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

1   discs have been sold in the United States and Canada alone.  In 2006, 1.7 billion

2   DVD movie discs were shipped in North America, while shipments of recordable

3   discs climbed to 5.1 billion discs globally.

4        10.    At issue is the technology used to make optical storage devices used to

5   store and display movies, songs and pictures.  Generally, optical storage media

6   consists of several layers.  A CD, for example, is comprised of a substrate, an

7   information layer (either formed into the substrate [or prerecorded CD] or formed

8   by a separate composition layer), a reflecting layer to reflect some portion of the

9   laser beam, and a protective layer over the reflecting layer.  Optical storage media

10  store digital information in a continuous spiral or track in the information layer,

11  which is similar to the continuous groove of a phonograph record.  The track is read

12  by pointing a laser beam onto the surface of the information layer.

13       11.    A prerecorded DVD is similar to a CD, except that the DVD stores

14  data in microscopic "lands" and "pits," which are alternating recessed and flat areas

15  on the information layer formed into the substrate.  The reflective bumps (called

16  "lands") and nonreflective holes (called "pits") aligned along the grooves represent

17  the zeros and ones of digital information.  DVDs use smaller tracks than CDs, as

18  well as new modulation and error correction methods.  These allow a DVD to store

19  data seven times as a large as that of a CD.  The narrow tracks in a DVD require

20  special lasers, different from the lasers used on a CD.  There are numerous different

21  DVD formats.  These formats include DVD-5s, which have only one information

22  layer, DVD-10s, which are essentially two DVD-5's bonded together and read from

23  opposite sides, and DVD-9's, which have two information/reflecting layers with

24  pits and lands that can be read from the same side of the disc by using a less

25  reflective coating on the layer closest to the laser beam and a more reflective

26  coating on the information layer further from the laser beam.  The laser beam inside

27  a DVD player can focus at two different levels so that it can "look through" this

28  "semi-reflective layer" to read the data on the second "reflective layer" underneath.

DAAR & NEWMAN, PLC

-4-

FIRST SUPPLEMENTAL COMPLAINT

1   A DVD-5 allows for storage of only five gigabytes of information while a DVD-9

2   allows for storage of nine gigabytes of information.

3                              **The DVD Forum**

4          12.    Following the development and success of the compact disc ("CD")

5   and CD-ROM, an alliance was formed by titans from the consumer electronics

6   industry to study and promote a standard for the development of a Digital Video

7   Disc ("DVD"). This alliance was the DVD Consortium.  Beginning in or about

8   1995, the members of the DVD Consortium worked together to agree on

9   specifications, termed "Formats" by the DVD Consortium, applicable to the

10  recording, production, replication or use of DVDs and related equipment (the

11  "DVD Specifications").

12         13.    Each of the members of the DVD Consortium was a holder or assignee

13  of patents that involved a user application of DVD technology.  The DVD

14  Consortium had a mission to create a worldwide standard for the use of the DVD.

15  The founding ten members of the DVD Consortium were Toshiba Corporation

16  ("Toshiba"), Thomson, Sony Corporation ("Sony"), Pioneer Electronic Corporation

17  ("Pioneer"), Koninklikje Philips Electronics N.V. ("Philips"), Mitsubishi Electric

18  Corporation ("Mitsubishi"), Matsushita Electric Industrial Co., Ltd. ("Matsushita"

19  and now Panasonic Corporation ("Panasonic")), Time Warner, Inc. ("Time

20  Warner"), Victor Company of Japan, Ltd. ("JVC"), and Hitachi, Ltd. ("Hitachi").

21         14.    Prior to DVD discs being first released to the consumer in 1997, there

22  had been two principal formats competing to be the next-generation disc to succeed

23  the CD, one that was proposed by Sony and Philips and the other by Toshiba, Time

24  Warner and Matsushita.  However, through the DVD Consortium, these two

25  factions agreed to a single standard, which became the standard DVD disc that uses

26  the DVD Logo (the "standard DVD").  The resulting standard DVD was a political

27  and commercial compromise.  The eventual standard DVD was not the result of a

28  research and development program intended to produce the best possible DVD

DAAR & NEWMAN, PLC

format, irrespective of the technology owned by the different companies concerned. The standard DVD was not developed as an open standard incorporating the best technologies available on the market.

15.    In October 1997, the ten-member DVD Consortium changed its name to the DVD Forum and opened membership to interested companies.  For purposes of this Complaint, references to the DVD Forum also include, as the context requires, the DVD Consortium.

16.    The DVD Forum describes itself as "the core DVD industry organization for establishing DVD format standards."  The self-stated purpose of the DVD Forum is, "(1) to establish the single DVD Format for each of the DVD application products, including revisions, improvements and enhancements, that would be in the best interests of consumers and users, and (2) to encourage the broad acceptance of DVD Formats on a worldwide basis among members of the Forum, related industries and the public."  The DVD Forum periodically meets throughout the world, including having meetings of its Steering Committee in this District.

17.    The DVD Forum has, as its executive body, a Steering Committee comprised of Principal Members, which are entities deemed to be making a significant contribution to the development, promotion or improvement of the DVD Formats and initially were the original ten companies that comprised the DVD Consortium.  The Steering Committee approves all decisions relating to the structure, policy or operation of the DVD Forum, including, but not limited to, adoption and/or publication of new DVD Formats or modifications, enhancements or other changes to existing DVD Formats, licensing of DVD Formats and the DVD Logo to DVD Forum members and other third parties, and the approval of the companies chairing and vice-chairing the DVD Forum's Technical & Verification Group and Working Groups.  The DVD Forum has a number of different technical Working Groups to establish, improve and enhance each format of its DVD

-6-

FIRST SUPPLEMENTAL COMPLAINT

1  products.  The membership of each Working Group is open to any Principal
2  Member of the DVD Forum.

3     18.   The Steering Committee companies of the DVD Forum, for the term
4  of February 2008 to February 2010, are Hitachi, IBM Corporation, Industrial
5  Technology Research Institute, Intel Corporation, LG Electronics, Inc., Memory-
6  Tech Corporation, Microsoft Corporation, Mitsubishi, NEC Corporation,
7  Panasonic, Paramount Pictures Corporation, Pioneer, Samsung Electronics Co.,
8  Ltd., Sanyo Electric Co., Ltd., Sharp Corporation, Sony, Thomson, Toshiba, Walt
9  Disney Pictures and Television, and Warner Bros. Entertainment, Inc.

10    19.   The DVD Forum maintains Antitrust Guidelines for the Forum
11  Participants (the "Antitrust Guidelines").  The updated November 5, 2007 Antitrust
12  Guidelines provide in part as follows:

13          "Communication among participants in the forum should
14          be aimed at advancing the goal of enhancing competition.
15          Participants in the forum should not have discussions
16          which call for or result in anticompetitive collective
17          action of any kind.  This applies both to formal meetings
18          and informal conversations before, during, and after the
19          event.  Your strict adherence to these guidelines is
20          essential.

21

22          "I.    The purpose of this forum is to provide technical
23          information concerning the DVD format, to exchange
24          ideas and opinions on the DVD format, to promote its use
25          by related industries, and to facilitate compatibility
26          among the participating companies and improvements in
27          the technology for the benefit of consumers.  Consistent
28          with basic compatibility, hardware, software and media

-7-

DAAR & NEWMAN, PLC

providers will be making their own judgments on
technology and will be competing with each other.  Do
not issue a 'call to action' or tell participants that they
should or should not do something."

* * *

"III.   Discussions should be restricted to technical issues
and should not involve business or competitive strategies
that would be implemented by individual participants or
by the group.  There should be no discussions of
distribution strategies or of entities with which
participants will or will not deal.

"IV.   Promotion of the DVD format as a standard is a
legitimate purpose of the Forum.  However, each
company shall make its own decisions and individual
companies shall adopt their own technologies and
business strategies in making products that use or do not
use the DVD format or any technical recommendations
for the DVD format made by the forum participants.
Attending the forum does not preclude participants from
using other formats in addition to or instead of the DVD
format or commit participants to adopt any technical
recommendations for the DVD format made by the
forum participants."

20.     The DVD Forum has only set specifications and formats for certain,
but not all, DVD formats.  The DVD Forum has documented its official
specifications in a series of format books published by the DVD Forum.  A DVD
Format Book or DVD Book is a technical standard document that defines DVD

-8-

FIRST SUPPLEMENTAL COMPLAINT

disc structures and regulations of the DVD Forum Format specifications. There are more than 144 possible variations of DVDs and DVDs come in approximately 24 different physical incarnations and more than 6 data-format variations. A traditional DVD is made of two 0.6mm substrates glued together. A DVD can be single-sided or double-sided. Physical compatibility is not an issue with a base DVD-ROM format. Every DVD player, drive and recorder is physically able to read data from a DVD-ROM disc.

21.     The primary formats adopted by the DVD Forum with its own standard specifications are DVD-ROM, DVD-Video, DVD-R, DVD-RAM, DVD-Audio, DVD-RW, and DVD-Video Recording 5.

22.     The DVD Forum recognizes that there are other DVD formats that are not part of the Formats of the DVD Forum. For example, the DVD Forum expressly states in its Mission Statement that, "Forum Members are not required to support the DVD Format to the exclusion of other formats."

23.     The next generation of DVDs involve high-definition and higher density DVDs. Different DVD industry groups have proposed and developed different new high-definition variations of the DVD. The major Japanese consumer electronics companies eventually consolidated into two different camps. The DVD Forum has promoted and set its own specifications for the standard HD DVD. Principal members of the DVD Forum, such as Sony, have formed the separate Blu-ray Disc Association, which has its own standards for Blu-ray discs. The DVD Forum format of HD DVD competes with the Blu-ray disc format in the United States market.

24.     Another major DVD format that competes with the Formats of the DVD Forum is DVD+RW. The DVD+RW is a writeable optical disc developed by a coalition of corporations known as the DVD+RW Alliance. The primary members of the DVD+RW Alliance include principal members of the DVD Forum and shareholders of DVD FLLC, Sony, Philips and Thomson. The DVD+RW

-9-

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

1  format is a competing format to the DVD-RW Format, which is developed by the
2  DVD Forum.  The DVD+RW format is not authorized by the DVD Forum.  The
3  DVD Forum recognizes that this other format is "strikingly similar in appearance"
4  to its own DVD-RW format.  The DVD-RW format competes with the DVD+RW
5  format in the United States market.

6  **DVD FLLC**

7       25.    Defendant DVD FLLC was established on or about April 14, 2000,
8  and has ten shareholders, Hitachi, Philips, Mitsubishi, Panasonic, Pioneer, Sony,
9  Thomson, Time Warner, Toshiba, and JVC.  It states is business as DVD format
10 and logo licensing, production, maintenance and issuance of DVD format books,
11 trademark registration and maintenance of DVD Logos, verification related
12 activities, and policing of pirate manufacturers, non-compliant products and
13 incorrect usage of the DVD Logos.  The DVD FLLC offers DVD format and logo
14 licenses to companies that wish to manufacture DVDs using the DVD Formats of
15 the DVD Forum and use the DVD Logo.  In addition, the DVD FLLC offers
16 licenses for HD DVD formats and logo, as established by the DVD Forum.  DVD
17 FLLC does not license the Blu-ray format or the DVD+RW format.

18      26.    DVD FLLC claims that it is responsible for the publication of the
19 technical specifications for the standard DVD Formats of the DVD Forum.  DVD
20 FLLC also claims to own the trademarks worldwide for the DVD Logo that appears
21 on DVD products for sale in the United States and around the world.  DVD FLLC
22 is the exclusive licensor of the technical specifications of the DVD Forum and the
23 DVD Logo.

24      27.    Upon information and belief, the DVD Forum sets, through its
25 Steering Committee, policies and procedures that are then implemented by DVD
26 FLLC.  These policies include decisions on formats and use of the DVD Logo.
27 DVD FLLC also provides updates to the Steering Committee of DVD Forum at
28 Steering Committee meetings.

-10-

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

28.   DVD FLLC's licensing program has an up-front cost of $10,000 per format and product category, and with no additional charges. A manufacturer who desires to produce DVD products using DVD Forum Formats and the DVD Logo can obtain a license to use the DVD Forum specifications and the DVD Logo. Under the license agreements with DVD FLLC, the manufacturer of DVD products that do not comply with the applicable DVD specifications of the DVD forum are outside the scope of the license grant and cannot then bear the DVD Logo. DVD FLLC has a verification procedure to test whether, under its licensing agreement, DVDs bearing the DVD Logo are compliant with the format specifications of the DVD Forum.

29.   Use of the DVD Logo and the DVD Forum Formats is needed to use the DVD Logo by, for example, any replicator of pre-recorded DVD discs, manufacturers of writable DVD discs, and manufacturers of DVD players. There are no per-piece royalties or annual fees. All current License Agreements with DVD FLLC expire on December 31, 2009. In order to continue manufacturing products with the DVD Logo and using the DVD Forum Formats on and after January 1, 2010, licensees need to enter into a new License Agreement, a draft of which is available online from DVD FLLC. For purposes of this Complaint, EcoDisc AG is informed and believes that there is no material difference between the current License Agreement of DVD FLLC and the draft License Agreement for use on and after January 1, 2010.

30.   DVD FLLC licenses use of the DVD Forum's specifications and DVD Logo following a prospective licensee's payment of $5,000 and execution of a Non-Disclosure Agreement. DVD FLLC then provides the prospective licensee with a Format Book. If the licensee then decides to proceed with commercial production, it may apply for a license to use the DVD specifications in the Format Book and DVD Logo on commercial DVD product. To obtain a license, the prospective licensee must pay a license fee of $10,000 per format and product category (with a

-11-

FIRST SUPPLEMENTAL COMPLAINT

1  one-time credit for the fee that the licensee paid upon execution of the Non-

2  Disclosure Agreement) and execute a License Agreement with DVD FLLC.  The

3  License Agreement grants the licensee a non-exclusive, non-transferable license, on

4  a worldwide basis.  The License Agreement also provides a non-exclusive, non-

5  transferable license, on a worldwide basis, to use the DVD Logo on specific DVD

6  products.

7  ### DVD Format Specifications In The Public Domain

8  31.   Industry standards exist for a basic DVD read-only disc format.  This

9  industry standard format is freely downloadable and in the public domain.  Ecma

10  International ("Ecma") is an industry association founded in 1961 and dedicated to

11  the standardization of Information and Communication Technology and Consumer

12  Electronics.  For over 40 years, Ecma has actively contributed to worldwide

13  standardization in information technology and telecommunications.  The aims of

14  Ecma include publishing its Standards and Technical Reports in electronic and

15  printed form and having its publications be freely copied by all interested parties

16  without restrictions.  More than 370 Ecma standards have been published, and more

17  than two-thirds of the Ecma Standards have also been adopted as International

18  Standards and/or Technical Reports.

19  32.   The Ecma Technical Committee TC31 was established in 1984 for the

20  standardization of Optical Disks and Optical Disk Cartridges.  In February 1997,

21  the DVD Forum proposed to Ecma Technical Committee TC31 to develop an

22  ECMA Standard for a 120 mm. optical disc.  Ecma then developed a DVD standard

23  that specifies the physical characteristics of such a disc, which can be used for

24  video, audio or data applications.  A standard for volume and file structure common

25  to these three types of applications has been developed by Ecma Technical

26  Committee TC15 and further work has been undertaken for a rewritable disc known

27  as DVD-RAM, and for a writable disc, DVD-R.  The work of Ecma on these

28  ///

-12-

DAAR & NEWMAN, PLC

1  further standards is supported by a number of principal members of the DVD

2  Forum.

3        33.    Ecma publishes and provides as a free download on its website its

4  Standard ECMA 267 (3rd Edition, April 2001), which specifies formats for four

5  types of DVD-Read-Only discs.  The Ecma Standard was also adopted by the

6  International Standardization Organization ("ISO") as International Standard

7  ISO/IEC 16448.

8                          **DVD Replicators**

9        34.    The use of DVD standards, whether those in the public domain, or

10  offered by associations such as the DVD Forum, pertain, for purposes of this action,

11  to the replication of DVD discs.  DVD disc replicators create DVD discs by an

12  injection-molding process, using stampers to create the discs on which the content

13  is then embedded.  A DVD disc replicator is entrusted with content by a content

14  provider.  The replicator may provide a mastering service and create the stampers

15  from the original source input or the replicator may purchase stampers from a third

16  party.  The stampers are placed in the mold and the disc pressed based on the mold.

17  The finished pre-recorded DVD disc is then metalized, printed and packaged and

18  then sold to the content provider in the quantities ordered.  The replicator may itself

19  offer a distribution service for the content provider.  The content may include video,

20  audio, games, business software, and other uses.  The process of DVD replication is

21  different from that of the duplication of DVD discs.  A DVD duplicator will take

22  recordable or rewritable discs, which are blanks, and burn the content onto the

23  discs.

24        35.    The replication market involves both the manufacture of products,

25  such as pre-recorded DVD-5 and DVD-9 discs, and the provision of a service for

26  content providers who entrust content to replicators in return for the provision of

27  mass-replicated copies of the content embedded in DVD discs.  DVD FLLC reports

28  that it has more than 400 license agreements with replicators.

FIRST SUPPLEMENTAL COMPLAINT

36.     Plaintiff is informed and believes that virtually all, if not all, replicators have a license agreement with DVD FLLC in order to make standard DVD discs with the DVD Logo.

### The EcoDisc

37.     The thin DVD was invented in approximately 2004.  The thin DVD is a 0.6mm disc that is essentially one-half of the standard DVD (1.2mm disc), which is composed of two 0.6mm discs epoxied together into a single disc.

38.     The inventor of the thin DVD, along with another individual, analyzed all of the DVD players and drives in the market for functionality and how they interact with discs, especially at high speed.  As a result, they engineered a disc with features that matched the characteristics of DVD players and drives, which, when combined, provided the same playability as the standard DVD, but is only 0.6mm, rather than 1.2mm, thick (hereinafter referred to as the "EcoDisc Technology").

39.     Plaintiff EcoDisc AG is a research and development company, which does not have its own production facilities.  EcoDisc AG is licensing the EcoDisc Technology to DVD replicators, providing them with the necessary upgrade kits for their existing equipment and training their technical staff to make discs using the EcoDisc Technology.  The EcoDisc Technology is currently subject to a number of patents, including four European patent applications (one of which was granted and published in October 2009), two international patent applications, and six U.S. patent applications.  The EcoDisc Logo has trademark and design protection in the world and is licensed to EcoDisc manufacturers, together with the patents and the manufacturing know-how.

40.     The EcoDisc Technology is a major innovation in the DVD industry.  EcoDiscs are environmentally-friendly DVDs.  The standard DVD has remained largely unchanged since its invention.  The standard DVD currently offers very little in reducing oil dependency, minimizing energy consumption and reducing

-14-

$CO_2$ emissions. The standard DVD disc uses a non-biodegradable, toxic resin as the epoxy to bond the two halves of the DVD. The EcoDisc is engineered so that its impact on the environment is friendly. The EcoDisc is not only thinner, lighter, and more flexible than a standard DVD, it is also free of toxic bonder. The EcoDisc consists of approximately 50% less polycarbonate, an oil derivative used as the main material to form the disc in a standard DVD. By halving the amount of raw material, the manufacturing of the EcoDisc also needs approximately 50% less energy for production. The EcoDisc, compared to a standard DVD, provides a reduction in carbon dioxide emissions by approximately 52%. In addition, the thinner EcoDisc reduces the transport volume from factory to the consumer and thereby reduces freight costs and conserves fuel. The EcoDisc increases warehouse storage capacity and its lighter weight saves on shipping costs. In addition, the EcoDisc's flexibility provides stronger durability when it is being handled, packaged or mailed to consumers. The EcoDisc can be recycled, due to the absence of any toxic bonder. A standard DVD cannot be recycled because of the toxic bonder.

41.     The EcoDisc was invented in 2006 and manufacturing of EcoDiscs started in Europe during the Summer of 2007. Since 2007, tens of millions of EcoDisc DVDs have been produced and distributed. EcoDiscs have also been distributed in mass quantities with magazines and newspapers. Currently, the EcoDisc has the same data structure and same data layer as a conventional DVD-5 (4.7 gigabytes). DVD-5's are commonly used for promotional, educational, children's, enterprise, government, newspaper and magazine cover-mounts. The DVD-5 currently represents about 70% of the market for DVDs. A dual-layer EcoDisc, which would be equivalent in storage to a DVD-9, is currently under development and is expected to be released in 2010.

42.     The EcoDisc does not use the DVD Logo, but rather uses the EcoDisc Logo. An EcoDisc does not use any of the Format standards of the DVD Forum

-15-

DAAR & NEWMAN, PLC

1   and is not compliant with any DVD Format.  The EcoDisc is not a standard DVD.

2   A number of patents of different patent pools are used in the manufacture of an

3   EcoDisc and EcoDisc manufacturers are to pay royalties to these patent pools for

4   the manufacture of an EcoDisc.

5       43.   In or about December 2008, EcoDisc AG entered into an EcoDisc

6   Single Layer DVD-Video and DVD-ROM License Agreement (the "EcoDisc

7   License Agreement") with U-Tech Media USA, LLC ("U-Tech"), which is located

8   in Milpitas, California, and its affiliate D-Tech USA, LLC, which is located in

9   Plano, Texas.  The EcoDisc License Agreement provides for the payment of an

10  annual minimum royalty for each injection mold used to make EcoDiscs, as well as

11  a fixed per-unit royalty for each EcoDisc manufactured, sold or otherwise disposed

12  of by licensees.  The EcoDisc License Agreement has an effective date of July 1,

13  2008, and has an initial term of five years, to be extended for further one-year

14  periods, unless the License Agreement is terminated by giving six months' written

15  notice.  U-Tech is a disc replicator that also makes Blu-ray discs, standard DVDs

16  under license with DVD FLLC, CDs, and other optical discs.  The U-Tech DVD

17  FLLC license was entered into with an effective date as of December 15, 2000.

18  There is a successor license agreement dated as of March 15, 2005.

19      44.   As part of EcoDisc AG's efforts in the United States, it has entered

20  into contracts with a number of entities and persons, including a Los Angeles based

21  advertising and public relations company, a commissioned salesperson for the sales

22  of EcoDiscs, and a commissioned salesperson to arrange for EcoDisc licenses with

23  optical disc replicators in the United States.  In March 2008, EcoDisc AG also was

24  an exhibitor in Los Angeles at the main trade show based in the United States.

25  **Defendants' Efforts To Suppress EcoDisc Technology And EcoDiscs**

26      45.   Defendants DVD Forum and DVD FLLC have, along with certain of

27  their respective members and shareholders, taken intentional acts in order to

28  suppress the use of the innovative EcoDisc Technology and prevent EcoDiscs from

-16-

DAAR & NEWMAN, PLC

competing with the standard DVD of the DVD Forum and DVD FLLC. While the thin DVD has been in existence for a number of years, the EcoDisc's early success in Europe resulted in defendants taking note of the EcoDisc. DVD FLLC has acknowledged in writing that it "strive[s] to contain the non-compliant products [EcoDisc] from appearing in the market."

46.     One of the Working Groups of the DVD Forum is WG-2 (physical specifications for DVD-ROM). This is a DVD Forum Working Group responsible for developing physical specifications for the DVD-ROM Format used by the DVD Forum and licensed by and through DVD FLLC.

47.     In 2008, the DVD Forum WG-2 claims to have conducted a technical study of 0.6mm discs. At the September 17, 2008 Steering Committee meeting of the DVD Forum, the DVD FLLC representative in attendance reported that DVD FLLC was awaiting the DVD Forum WG-2's final report on its technical study to determine what should be done as to 0.6mm discs. The DVD Forum Steering Committee, on November 19, 2008, met and heard a report on WG-2's technical study of 0.6mm discs and discussed "this issue." At this Steering Committee meeting there was also an update provided by the representative from DVD FLLC, which reported that, "There was a further discussion of the issue of 0.6 mm discs in the marketplace in Europe."

48.     In March 2009, DVD FLLC sent a written communication to all of its licensed replicators throughout the world, including U-Tech. This written communication was a threat to each replicator with a DVD FLLC License Agreement, that if the replicator manufactures any 0.6mm discs, including an EcoDisc, the manufacture of such products would be a serious breach of the DVD FLLC License Agreement and may lead to early termination of the replicator's DVD FLLC License Agreement. The March 2009 DVD FLLC written communication stated, as follows:

///

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

"Message from DVD FLLC

**"0.6mm Optical Discs are Not DVD Format Compliant**

"Dear Licensed Replicators,

"Thank you for your continued support of the DVD Format/Logo License Program.  As you may know, there are companies that have been trying to market and/or promote 0.6mm thick optical discs.

"This is a reminder that 0.6mm discs are not Format compliant.  We have received information that, in some instances, such 0.6mm discs have caused damages to the playback apparatus.

"Since 2002, DVD FLLC has alerted Licensees that such discs are not Format compliant, and additionally has made such information available on DVD FLLC's website.  Separately in 2003 we sent a notice regarding such non-compliant discs to our replicating Licensees. Licensees are therefore on notice that 0.6mm discs are not Format compliant.

"The License Agreement requires that all DVD products manufactured by Licensees comply with the specifications set forth in the applicable DVD Format

-18-

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

1    Books.  (Art. 2.8.)  The manufacturer of non-compliant

2    products, including but not limited to the manufacture of

3    0.6mm discs, is a serious breach of the DVD

4    Format/Logo License Agreement and may lead to early

5    termination of the DVD Format/Logo License

6    Agreement.

7

8    "Thank you in advance for your attention and

9    cooperation.

10

11    "Sincerely yours,

12

13    "Kaoru Saito

14    "Manager, Licensing"

15

16    49.    DVD FLLC also put on its website, in or about March 2009, the

17    following information regarding 0.6mm discs:

18        "Q.2  Is 0.6mm Thick Optical Disc DVD Format?

19

20        "A.2  0.6mm Thick Optical Discs does not use DVD

21            Format in a proper manner.  It is only imperfectly

22            and inappropriately using the Format.  The DVD

23            Forum judged that such a Disc is not compliant with

24            the DVD Specifications.  To use DVD Formats for

25            products that do not conform to the Specifications is

26            NOT admissible."

27    ///

28    ///

FIRST SUPPLEMENTAL COMPLAINT

**"Q.3   Is it alright to manufacture them?**

"A.3   Manufacturing 0.6mm Thick Optical Discs is

misusing the Format and is considered to be a

violation of the DVD Format/Logo License, since

the products are clearly not compliant with the

DVD Specifications.  It is reported that such Discs

are re-appearing in the market, bundled to

magazines or as free gifts.  Because of their non-

compliance, they often cannot be properly played

on existing players and drives, and there have been

reports of damages to the discs and/or the

hardware.  In some cases the disc did not eject

properly and the player had to be serviced.

Licensees are warned that manufacturing non-

compliant DVD Products could lead to termination

of the License."

50.     DVD FLLC is making express, clear threats to its licensees that if they make an EcoDisc (which uses different molds, different specifications, is subject to different patents and patents pending, does not use the DVD Logo, and does not claim to be compliant with any of the specifications of the DVD Forum), they are in violation of the DVD FLLC License Agreement and may have their DVD FLLC License Agreement terminated.  The DVD FLLC License Agreement is not exclusive and expressly does not prevent the manufacture of any other formats, such as Blu-ray discs or DVD+RW discs.

51.     DVD FLLC disseminated information does not refer to any test results of the WG-2 working group of the DVD Forum, even though it is reported that the DVD Forum judged that an EcoDisc is not compliant with the DVD specifications

-20-

FIRST SUPPLEMENTAL COMPLAINT

1   of the DVD Forum.  The reference to 0.6mm discs reappearing in the market

2   bundled to magazines or free gifts is a reference to the EcoDisc and its success in

3   Europe.

4          52.    The EcoDisc has been subjected to testing and certification by a third

5   party, Professional Multimedia Test Centre, and was awarded a 99.2% playability

6   rating.  The Professional Multimedia Test Centre did intensive testing, including

7   testing on 132 different DVD playback systems.  The EcoDisc can be played on any

8   standard DVD player, computer, laptop or in-car entertainment drive.  EcoDisc AG

9   is unaware of a single bona fide report that an EcoDisc cannot properly be played

10  on existing DVD playback devices and is unaware of any bona fide report that

11  EcoDisc has caused any damage to an EcoDisc being played or to any DVD

12  playback device.  EcoDisc AG is aware that certain Apple Mac notebook computers

13  were made with a Matshita DVD slot-in drive that did have an ejection problem of

14  the drive with specific discs, including but not limited to the EcoDisc.  However,

15  the EcoDisc was playable on the Matshita DVD slot-in drive and the EcoDisc did

16  not cause any damage to this drive.  Upon information and belief, these Matshita

17  slot-in drives do not meet the specifications of slot-in mechanisms defined in

18  standards issued by principal members of the DVD Forum and certain DVDs using

19  the DVD Forum standards have the same ejection problem as with the EcoDisc.

20  Unlike these DVDs, the EcoDisc has a printed visual warning placed on each

21  EcoDisc showing that the EcoDisc should not be used on an Apple Mac slot-in

22  drive.  EcoDisc AG has taken steps to change the design of the EcoDisc to avoid

23  the minimal, only issue known with regard to the ejection of the EcoDisc on these

24  Matshita slot-in drives.

25         53.    The DVD Forum also prominently lists on its website, at its homepage,

26  under "Announcements," as follows:

27  ///

28  ///

DAAR & NEWMAN, PLC

1    "Announcements

2

3    "Please note that the "+RW" format, also known as

4    DVD+RW was neither developed nor approved by the

5    DVD Forum.  The approved recordable formats are

6    DVD-R, DVD-RW and DVD-RAM.

7    **"IMPORTANT NOTICE ABOUT '0.6mm Disk'**

8

9    "0.6mm Thick Optical Disc does not use DVD Format in

10   a proper manner.  It is only imperfectly and

11   inappropriately using the Format.  The DVD Forum

12   judged that such a disc is not compliant with the DVD

13   Specifications."

14       54.    Upon information and belief, defendants do not act to suppress the use

15   of the technology and products of the DVD+RW Alliance and the Blu-ray Disc

16   Alliance, because both of these alliances are comprised of prominent principal

17   members of the DVD Forum and shareholders of DVD FLLC.  On the other hand,

18   the DVD Forum and DVD FLLC have determined that they can suppress and

19   prevent competition from the EcoDisc Technology and EcoDiscs, by making

20   knowingly unfounded and unwarranted statements about the reliability of the

21   EcoDiscs and, more importantly, by threatening all of DVD FLLC's licensed

22   replicators that if they make an EcoDisc, they may lose the ability to make standard

23   DVD discs and use the DVD logo.  The DVD Forum and DVD FLLC is not known

24   to have made such threats or claims as to other competing formats, such as Blu-ray

25   discs and the DVD+RW discs.

26       55.    When replicators have contacted the DVD FLLC with regard to

27   making EcoDiscs, at least on one recent occasion, DVD FLLC responded in writing

28   as follows:

-22-

FIRST SUPPLEMENTAL COMPLAINT

1   "Thank you for your e-mail regarding our letter.

2

3   "As you may be aware, the DVD Forum has determined

4   that 0.6mm discs to be non-compliant.

5   www.dvdforum.org/forum.shtml 'Announcements'

6   **"IMPORTANT NOTICE ABOUT '0.6mm Disk'**

7

8   "0.6mm Thick Optical Disc does not use DVD Format in

9   a proper manner.  It is only imperfectly and

10  inappropriately using the Format.  The DVD Forum

11  judged that such a disc is not compliant with the DVD

12  Specifications."

13

14  "At DVD FLLC, we license the DVD Formats that were

15  created by the DVD Forum, and strive to contain the non-

16  compliant products from appearing in the market.

17  Therefore, in order to maintain the healthy market and to

18  minimize the problems between disc products and

19  hardware, DVD FLLC must instruct our licensees to

20  manufacture compliant DVD Products.

21

22  "We request that all Licensees aim to manufacture

23  Format compliant DVD Products, as stipulated in Article

24  2.8 and 2.9 of the License Agreement.

25

26  "Thanking you in advance for your cooperation and

27  understanding, as well as your efforts in avoiding any

28  breach of the Agreement.

-23-

FIRST SUPPLEMENTAL COMPLAINT

"Regards,

"Kaoru Saito

"DVD FLLC"

56.     Articles 2.8 and 2.9 of the DVD FLLC License Agreement do not restrict licensees from making EcoDiscs or any other disc that does not use a DVD Forum format. Article 2.8 provides that the licensee agrees that all discs that use information disclosed in a DVD Format Book shall comply with the specifications set forth in the applicable DVD Format Book. Article 2.9 provides that the license provided to replicators does not apply to any disc that uses information disclosed in a DVD Format Book that does not comply with the specifications in the format book.

57.     Philips, one of the founders and principal members of the DVD Forum and a shareholder of DVD FLLC, had agreed to provide patent licenses to users of the Ecma DVD standards. Philips has expressly recognized that EcoDiscs and other 0.6mm discs are "Non-Standard DVD Discs." Philips, in an apparent standard side letter agreement regarding a patent license of its AC-3 technology to make 0.6mm discs, refers to EcoDiscs as an example of a "Non-standard DVD Disc". The Philips side letter also requires the licensee to acknowledge and agree that the DVD Logo is proprietary to DVD FLLC. The side letter further requires the licensee to agree to refrain from using the DVD Logo on "Non-Standard DVD Discs", such as EcoDiscs, as well as in literature and advertising materials in connection with "Non-Standard DVD Discs" without the express written agreement of DVD FLLC. The licensee is also required to acknowledge that the Non-Standard DVD Discs, ". . . may cause playability problems on DVD Players and other playback equipment. Licensee undertakes to ensure that a clear and legible warning message, of prominent dimensions and in a non-removable form, is placed on the outer packaging (preferably printed on the art work) of the Non-Standard

-24-

DVD Discs sold by Licensee and undertakes to ensure that such warning message shall reach the ultimate user of the Non-Standard DVD Discs." The side letter also requires the licensee to indemnify and hold harmless Philips from any damage caused by "Non-Standard DVD Discs" manufactured and/or sold by the licensee.

58. The DVD Forum and DVD FLLC have disregarded the DVD Forum's own Antitrust Guidelines, which provide in part, "Do not issue a 'call to action' or tell participants that they should or should not do something. . . . "Discussions should be restricted to technical issues and should not involve business or competitive strategies that would be implemented by individual participants or by the group. . . . There should be no discussions of . . . entities with which participants will or will not deal. . . . [I]ndividual companies shall adopt their own technologies and business strategies in making products that use or do not use the DVD format . . . . Attending the forum does not preclude participants from using other formats in addition to or instead of the DVD format . . . ."

59. On April 2, 2009, the Regional Court of Hamburg, Germany, issued a preliminary injunction at the request of EcoDisc AG against DVD FLLC, enjoining DVD FLLC from stating to replicators domiciled in member states of the European Union that are licensees of DVD FLLC that the manufacture of 0.6mm discs is in breach of the DVD FLLC License Agreement and may lead to termination of the License Agreement. For each case of a violation by DVD FLLC of the injunction, the court can order DVD FLLC to pay a fine of up to € 250,000 or subject it to arrest for contempt of court. The court issued the injunction without a prior hearing and notice to DVD FLLC. DVD FLLC has not yet challenged the injunction.

60. On June 12, 2009, DVD FLLC filed a complaint in the United States District Court, Southern District of New York, against U-Tech and a company that makes a 0.6mm DVD different from the EcoDisc. With regard to U-Tech, DVD FLLC claims it was entitled to an injunction and damages and alleges in part as follows:

FIRST SUPPLEMENTAL COMPLAINT

"27.  A DVD manufactured according to the specifications in the DVD Format Books is 1.2 mm thick. By complying with the specifications in this regard, both DVD replicators and hardware manufacturers can ensure the inter-operability of their DVD products with other DVD products on the market – that is, other thing being equal, the compliant disc will fit into the specification-compliant DVD disc drives found in consumer electronics products, and the disc drives designed for compliant DVD discs in the consumer electronics products will read and process the information on those discs properly.

\* \* \*

"30.  Upon information and belief, U-Tech has manufactured and distributed in the United States DVD discs that are 0.6 mm thick, or is prepared to do so imminently.  According to press reports, U-Tech has entered into license agreements with a European firm, EcoDisc Technology AG ('EcoDisc'), regarding the technology to manufacture DVD discs that are only 0.6 mm thick.  EcoDisc markets and promotes these discs as identical to standard DVD discs in all other respects.

"31.  Furthermore, EcoDisc has acknowledged in a pleading filed in a German court (1) that 'DVD FLLC publishes the books (so-called "DVD Format Books") where the respective specifications of individual DVD formats, namely DVD-ROM, DVD-Video and DVD-

-26-

FIRST SUPPLEMENTAL COMPLAINT

Audio are printed,' and (2) that '[t]he specifications for
the DVD formats DVD-ROM, DVD-Video and DVD-
Audio are standards applicable throughout the world
which, in particular, ensure that the DVDs are readable
and can be played in standard players.'  In addition,
EcoDisc has represented that, except for its physical
dimensions, '[b]oth with regard to its data storage
capacity and the playability on DVD players,' the 0.6
mm disc 'corresponds to the conventional DVD of the
common type "DVD-5".'"

"32.  Upon information and belief, use of non-compliant
0.6 mm discs has caused, and will continue to cause,
malfunctions in DVD-related consumer electronics
products.  Reports in the press, on websites, and on
EcoDisc's own promotional materials tell of
malfunctions in which non-compliant 0.6 mm discs jam
in a disc drive, causing malfunctions.  These results have
been confirmed by industry studies.  In addition, industry
studies show that the physical features of the non-
compliant 0.6 mm discs can and will affect the ability of
a DVD player to read the information on the disc, and to
process that information correctly – in some instances,
causing disruption in the video display.

                                    * * *

"37.   Unless Defendants are restrained by this Court,
DVD FLLC will suffer substantial, imminent and
irreparable injury.  Among other things, DVD FLLC has

DAAR & NEWMAN, PLC

-27-

FIRST SUPPLEMENTAL COMPLAINT

made a substantial investment in its licensing program, a
principal objective of which is to ensure the consistency
and compatibility of DVD products. DVD FLLC enjoys
substantial goodwill among members of the DVD
industry and among consumers as a result of the success
of its licensing program, including its success to date in
achieving its consistency and compatibility objectives.
Because the introduction of non-compliant products,
including 0.6 mm discs, can and does interfere with the
operation of DVD products, Defendants' introduction
and further distribution of non-compliant discs into the
DVD market poses an imminent threat to that goodwill.
The introduction of non-compliant products will
undermine industry and consumer confidence in DVD
technology generally, and will interfere with DVD
FLLC's efforts to continue to promote and expand a
licensing program that is premised on the common
benefits that derive from licensees' compliance with a
common set of specifications. . . ."

61.   DVD FLLC also requested that the United States District Court for the
Southern District of New York issue an order requiring U-Tech to destroy its stock
or inventory of EcoDiscs and any other 0.6mm discs that DVD FLLC claims are
non-compliant DVD products as well as destroy any equipment used in the
production of EcoDiscs and any other non-compliant DVD products and to recall
from its customers, distributors and any recipients any non-compliant DVD
products.

///

-28-

FIRST SUPPLEMENTAL COMPLAINT

62.    Upon information and belief, active participants in the DVD Forum and shareholders of DVD FLLC have distributed copies of the DVD FLLC complaint against U-Tech to replicators in the United States and elsewhere.

63.    EcoDisc AG is informed and believes, and thereon alleges, that DVD FLLC filed its complaint against U-Tech not in a genuine attempt to obtain an injunction or damages, or to otherwise influence governmental decision making, but for the improper purpose of preventing U-Tech and other replicators from making EcoDiscs.  DVD FLLC's allegations in its complaint as to U-Tech are baseless, false and a sham.

64.    On August 7, 2009, the United States District Court for the Southern District of New York dismissed U-Tech without prejudice from DVD FLLC's lawsuit based upon a stipulation by DVD FLLC and U-Tech.

65.    As a result of the conduct of defendants herein, replicators will not do business with EcoDisc AG under the threat of a cancellation of their License Agreement with DVD FLLC.

66.    U-Tech did not start manufacturing EcoDiscs after being threatened and then sued by DVD FLLC.

67.    Defendants caused EcoDisc AG to stop its planned marketing rollout to enter the United States market since EcoDisc AG cannot license the replicators needed to enter the United States market.

68.    Defendants also caused EcoDisc AG to lose key staff in the United States.  For example, the Vice President of Licensing of North America for EcoDisc AG resigned as of July 31, 2009, based on his inability to have replicators enter into licensing agreements with EcoDisc AG.

69.    EcoDisc AG does not seek in this action any relief or damages based on any type of communications or other conduct by defendants DVD FLLC or DVD Forum directed to any third parties domiciled in Member States of the European Union.  Any such relief or damages would be the subject of the

-29-

FIRST SUPPLEMENTAL COMPLAINT

1   proceedings initiated by EcoDisc AG in the Regional Court of Hamburg, Germany.

2   **Pertinent Events Following The Filing Of The**

3   **Complaint In This Action**

4   70.   EcoDisc AG has continued to refine the EcoDisc.  As of

5   approximately November 2009, EcoDiscs no longer have any known ejection issue

6   on any disc drives.  Accordingly, EcoDisc AG does not place any warning on an

7   EcoDisc and/or its packaging.

8   71.   EcoDisc AG has also had the EcoDisc subjected to a very rigorous and

9   comprehensive media format test by Testronic Labs, which is a well known

10   independent quality assurance testing company.  This testing included a test bed of

11   more than 240 players and disc drives, including Blu-ray players, standard DVD

12   players and PC and Apple disc drives.  The equipment tested included up to 12 year

13   old equipment.  The testing took place at Testronic Labs' facilities in Burbank,

14   California and in Hasselt, Belgium.  Based on this testing Testronic Labs found

15   that:

16       "Based on testing the EcoDisc on in excess of 240

17       players and drives and after thorough inspection in

18       accordance to the quality criteria specified above [disc

19       start up, disc start up time, disc playback, disc noise, and

20       disc ejection], Testronic Labs have approved the EcoDisc

21       as fit and robust for the purposes intended."

22   72.   EcoDisc AG also conducted further independent product tests of the

23   EcoDisc on a large number of additional players and disc drives in accordance with

24   Testronic Labs' quality criteria.  Collectively, the EcoDisc was tested on 402

25   different players and disc drives.

26   73.   The above testing of the EcoDisc did not result in any ejection

27   problems with an EcoDisc.  The compliance result for the playability of an

28   EcoDisc was approximately 99.25%.  EcoDisc AG is informed and believes and

-30-

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

thereon alleges that these test results are excellent and higher than, or at least comparable with, DVD industry compliance test results of standard DVDs. EcoDisc AG is informed and believes that standard DVDs may not operate in some players and disc drives.

74.     EcoDisc AG has conducted testing of other 0.6 mm discs in order to compare how other 0.6 mm discs compare to the EcoDisc.  Based on this testing, EcoDisc AG is informed and believes that unlike an EcoDisc, other 0.6 mm discs may have playability and compatibility problems with certain players and disc drives.

75.     EcoDisc AG is informed and believes and thereon alleges that in response to its Complaint in this action, DVD FLLC sent out to all of its licensed replicators a written communication dated December 15, 2009.  This communication provides in pertinent part as follows:

Re: 0.6 mm Optical Discs

"Dear Licensee-Replicator,

*   *   *

"As some of you may know, there has been an effort to introduce into the marketplace optical discs with a thickness of 0.6 mm ('0.6 mm discs').  Although the DVD Format Books specify that discs need be 1.2 mm thick, having considered the various interests at issue in this matter, DVD FLLC has determined to offer a Supplement to the DVD Format/Logo License Agreement ('Supplemental Agreement') that addresses the replication of 0.6 mm discs.

-31-

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

"A form of the Supplemental Agreement is attached.

"If you are interested in exploring the replication of 0.6 mm discs, please sign two copies of the Supplemental Agreement and return both copies to DVD FLLC at your earliest convenience."

76.    Any replicator of a standard DVD would be required to enter into the mandatory Supplemental Agreement of DVD FLLC in order to make an EcoDisc on or after January 1, 2010. The Supplemental Agreement provides in pertinent part as follows:

"This Supplement to the DVD Format/Logo License Agreement ('Supplemental Agreement') sets forth the terms and conditions applied to by and between the DVD Format/Logo Licensing Corporation ('DVD FLLC') and the undersigned Licensee . . . regarding the manufacture, replication and sale of pre-recorded optical discs with a thickness in the disc's data area of 0.6 millimeters . . . .

"By this Supplemental Agreement, . . . , DVD FLLC and the undersigned Licensee agree as follows . . . :

"1.   DVD FLLC will take no action (including, but not limited to, termination of the License Agreement and/or other legal action) against the undersigned Licensee with respect to the manufacture, replication or sale of 0.6 mm discs, notwithstanding contrary provisions of the License Agreement, on the condition that the Licensee abides by the terms and conditions set forth in this Supplemental

-32-

FIRST SUPPLEMENTAL COMPLAINT

1   Agreement.

2

3   "2.  Each 0.6 mm disc, and/or the packaging in which the

4   Licensee reasonably expects the disc to reach the

5   consumer, will display the following notice in English (or

6   in the language of the country in which the replicator

7   reasonably expects such 0.6 mm disc to be distributed):

8

9   **"This disc is not a standard DVD, and may not**

10  **operate in some drives or players."**

11

12                      *  *  *

13

14  "6.  Licensee understands and agrees that the

15  manufacture, replication, distribution and/or sale of 0.6

16  mm discs is undertaken at Licensor's own risk, and that it

17  hereby agrees to indemnify DVD FLLC, and to hold

18  DVD FLLC harmless, with respect to any losses

19  (including litigation costs and attorneys' fees), claims,

20  damages, liabilities, demands, or causes of action

21  whatsoever, related to Licensee's manufacture,

22  replication, sale, distribution or other activities related to

23  0.6 mm discs." [Emphasis in original.]

24      77.   On or about January 14, 2010, the Regional Court of Hamburg,

25  Germany, issued a further preliminary injunction at the request of EcoDisc AG

26  against DVD FLLC, enjoining DVD FLLC from requiring its Licensees domiciled

27  in the Member States of the European Union from adding the above mandated

28  notice -- **"This disc is not a standard DVD, and may not operate in some drives**

-33-

FIRST SUPPLEMENTAL COMPLAINT

DAAR & NEWMAN, PLC

**or players"** -- to any EcoDisc and/or its packaging.  For each case of a violation by DVD FLLC of the injunction, the court can order DVD FLLC to pay a fine of up to € 250,000 or subject it to arrest for contempt of court.  The court issued the injunction without a prior hearing and notice to DVD FLLC.

## CLAIMS FOR RELIEF

### CLAIM 1

#### Violation of Sherman Act, Section 1

78.    EcoDisc AG realleges and incorporates by reference the allegations set forth in paragraphs 1 through 77.

79.    The actions of defendants the DVD Forum and DVD FLLC, as alleged hereinabove, constitute one or more unlawful contracts, combinations or conspiracies to restrain trade and interstate commerce in the United States market comprised of the manufacture and sale of 1.2mm DVDs and EcoDiscs.  Such contracts, combination and conspiracy consist of a continuing agreement, scheme, plan and concert of action among the DVD Forum and DVD FLLC to suppress innovative products and the competition that those products provide and increasingly do and will provide.  Defendants have agreed and acted in furtherance of such contracts, combination and conspiracy with the intent and for the specific purpose of excluding EcoDiscs from the United States market.

80.    The effects of the acts of defendants is to wrongfully and unlawfully suppress innovation and competition in DVD discs, including the new and innovative EcoDisc.  The public will be deprived of the benefits of fully recyclable, more environmentally-friendly and lower cost DVD discs.  EcoDiscs have a carbon emission in raw material and manufacturing process, which is approximately 52% less than the standard DVD.  EcoDiscs would contribute to the reduction of greenhouse gases.  In addition, the reduction of competition and the exclusion and

-34-

DAAR & NEWMAN, PLC

1  suppression of EcoDiscs from the United States market suppresses price

2  competition in DVD discs and results in artificially higher price levels for DVD

3  products to consumers.

4    81.    The action of defendants caused injury not only to competition, but to

5  EcoDisc AG, individually, by reason of which EcoDisc AG has suffered actual

6  damages in an amount to be proved at trial, which damages shall be trebled and

7  awarded to EcoDisc AG as provided in Section 4 of the Clayton Act, 15 U.S.C.

8  § 15.

9    82.    Unless the actions of defendants, as alleged hereinabove, are enjoined,

10  competition in the relevant markets will continue to be irreparably harmed in a

11  manner that cannot be compensated in monetary damages.

**CLAIM 2**

**Violation of the Cartwright Act**

14    83.    EcoDisc AG realleges and incorporates by reference the allegations set

15  forth in paragraphs 1 through 82.

16    84.    The actions of defendants, as alleged hereinabove, constitute one or

17  more unlawful combinations of capital, skill or acts, by two or more persons that

18  have the effect of unreasonably restraining trade.

19    85.    The action of defendants, as alleged hereinabove, caused injury not

20  only to competition, but to EcoDisc AG individually, by reason of which EcoDisc

21  AG has suffered actual damages in an amount to be proved at trial, which damages

22  shall be trebled and awarded to EcoDisc AG as provided in Section 16750(a) of the

23  Cartwright Act, California Business & Professions Code § 16750(a).

24    86.    Unless the actions of defendants, as alleged hereinabove, are enjoined,

25  competition in the relevant markets will continue to be irreparably harmed in a

26  manner that cannot be compensated in monetary damages.

27  ///

28  ///

FIRST SUPPLEMENTAL COMPLAINT

# CLAIM 3

## False Advertising in Violation of Section 43(a) of the Lanham Act

87.   EcoDisc AG realleges and incorporates by reference the allegations set forth in paragraphs 1 through 86.

88.   As alleged hereinabove, defendants have made false statements of fact on their websites about the products of its competitors, including EcoDiscs.  The websites of defendants are intended for the public, to promote standard DVD discs and sell the DVD Logo and the formats of the DVD Forum.

89.   The dissemination to all or virtually all replicators in the United States and elsewhere by defendants of the March 2009 threat regarding any replicator making any EcoDiscs contained false statements of fact and constitutes a commercial advertising and commercial promotion intended to suppress EcoDiscs and promote the business interest of defendants.   In addition, the dissemination to all or virtually all replicators in the United States and elsewhere of the December 2009 requirement for standard DVD replicators to place a warning on any EcoDiscs manufactured, replicated or sold and to require replicators to indemnify and hold harmless DVD FLLC, implying that EcoDiscs are dangerous, adds additional false statements of fact disseminated by defendants and constitutes further commercial advertising and commercial promotion intended to suppress EcoDiscs and promote the business interests of defendants.

90.   The false statements actually deceived, or had the tendency to deceive, a substantial segment of the intended target audience, including DVD replicators.

91.   The deception by defendants has influenced and is likely to continue to influence the decisions of the target audience.

92.   Defendants disseminated their false and misleading statements through one or more instrumentalities of interstate commerce.

93.   As a direct and proximate result of the false and misleading statements disseminated by defendants, EcoDisc AG has suffered damages, either by direct

-36-

DAAR & NEWMAN, PLC

1   diversion of sales from itself to defendants and their members and/or shareholders,

2   or by a lessening of the goodwill associated with EcoDisc AG's products in an

3   amount to be proved at trial.

4       94.    Defendants should be enjoined from further disseminating the false

5   statements regarding EcoDiscs, ordered to post and disseminate corrective

6   advertising on defendants' websites, and ordered to send corrective advertising to

7   all of the replicators with a DVD FLLC License Agreement.

8   **CLAIM 4**

9   **Tortious Interference With Contractual Relations**

10       95.    EcoDisc AG realleges and incorporates by reference the allegations set

11   forth in paragraphs 1 through 94.

12       96.    Defendants were and are aware of the EcoDisc License Agreement

13   between EcoDisc AG and U-Tech.

14       97.    Defendants acted in a manner designed to induce U-Tech not to

15   perform under the EcoDisc License Agreement and defendants' actions succeeded.

16       98.    As a direct and proximate result of the actions of defendants, EcoDisc

17   AG has suffered damages in an amount to be proved at trial.

18       99.    The actions of defendants, as alleged hereinabove, were done with

19   oppression, fraud or malice within the meaning of California Civil Code § 3294,

20   such that an award of punitive or exemplary damages is appropriate.

21   **CLAIM 5**

22   **Tortious Interference With Prospective Economic Advantage**

23       100.    EcoDisc AG realleges and incorporates by reference the allegations set

24   forth in paragraphs 1 through 99.

25       101.    EcoDisc AG has economic relationships with DVD replicators and

26   others and was in the process of developing economic relationships with DVD

27   replicators in the United States and elsewhere.  EcoDisc AG was likely to benefit

28   economically in the future from these economic relationships.

DAAR & NEWMAN, PLC

-37-

FIRST SUPPLEMENTAL COMPLAINT

102.   Defendants had knowledge of EcoDisc AG's relationships and prospective relationships with DVD replicators and others.

103.   Defendants engaged in intentional, unlawful and deceptive acts designed to disrupt these economic relationships and the development of additional economic relationships.  Defendants intended to induce replicators and others to refrain from doing business with EcoDisc AG and to induce them to do business with defendants and further defendants' business interests.

104.   As a direct and proximate result of the actions of defendants, EcoDisc AG has suffered damages in an amount to be proved at trial.

105.   The actions of defendants, as alleged hereinabove, were done with oppression, fraud or malice within the meaning of California Civil Code § 3294, such than an award of punitive or exemplary damages is appropriate.

## CLAIM 6

### Trade Libel

106.   EcoDisc AG realleges and incorporates by reference the allegations set forth in paragraphs 1 through 105.

107.   As alleged hereinabove, defendants published false and misleading statements about EcoDisc AG and its products.

108.   The false and misleading statements published by defendants caused others, including DVD replicators, not to deal with EcoDisc AG.

109.   Defendants made the false and misleading statements with knowledge of their falsity or with reckless disregard to their falsity.

110.   As a direct and proximate result of the actions of defendants, EcoDisc AG has suffered damages in an amount to be proved at trial.

111.   The actions of defendants, as alleged hereinabove, were done with oppression, fraud or malice, within the meaning of California Civil Code § 3294, such that an award of punitive or exemplary damages is appropriate.

///

-38-

## CLAIM 7

### Violation of California Business & Professions Code Sections 17200, et seq.

112.   EcoDisc AG realleges and incorporates by reference the allegations set forth in paragraphs 1 through 111.

113.   The actions of the defendants, as alleged hereinabove, constitute fraudulent or unfair business practices within the meaning of California Business & Professions Code §§ 17200, et seq.

114.   By reason of the acts of defendants alleged herein, defendants have wrongfully obtained economic benefits, at the direct expense of EcoDisc AG and to EcoDisc AG's detriment, in an amount to be proven at trial.  EcoDisc AG is entitled to restitution of the benefits wrongfully obtained by defendants' unlawful, unfair or fraudulent business practices, as alleged hereinabove.

115.   By reason of defendants' unlawful, unfair and fraudulent business practices, defendant should be enjoined from continuing their unlawful, unfair and/or fraudulent business practices.

## PRAYER FOR RELIEF

WHEREFORE, EcoDisc AG prays for relief against defendants, and each of them, as follows:

A.   A finding that defendants have violated Section 1 of the Sherman Act and the Cartwright Act, and award EcoDisc AG treble damages in an amount to be proven at trial;

B.   A finding that defendants have engaged in false advertising under the Lanham Act and pursuant thereto award EcoDisc AG damages in an amount to be proven at trial;

C.   A finding that defendants have intentionally interfered with valuable contractual relations and prospective economic relationships of EcoDisc AG to EcoDisc AG's economic detriment, and award EcoDisc AG damages in an amount

-39-

DAAR & NEWMAN, PLC

1   to be proven at trial for its resulting losses, as well as punitive damages, as

2   permitted by law;

3       D.    A finding that defendants have committed trade libel and award

4   EcoDisc AG damages in an amount to be proven at trial for its resulting losses, as

5   well as punitive damages, as permitted by law;

6       E.     A finding that defendants have violated the California Unfair

7   Competition Laws and provide EcoDisc AG with restitution of the benefits

8   defendants wrongfully obtained through their unlawful, unfair and/or fraudulent

9   business practices;

10       F.     Grant injunctive relief prohibiting defendants, and all persons, firms

11   and corporations acting on their behalf or on their direction or control, from

12   engaging in any further unlawful conduct under Section 1 of the Sherman Act, the

13   Cartwright Act, the Lanham Act, or the California Unfair Competition Laws, and

14   order defendants to post and disseminate corrective advertising on their websites

15   and to send corrective advertising to all of the DVD replicators with a DVD FLLC

16   License Agreement ;

17       G.     Award EcoDisc AG attorneys' fees and costs of the action; and

18       H.     Award EcoDisc AG such other, further and different relief as may be

19   necessary and as the Court deems proper and just.

20

21   DATED:  February 8, 2010       DAAR & NEWMAN
                                a Professional Law Corporation

22                                  Jeffery J. Daar
                                  Michael R. Newman

23

24                                  By:
                                  Jeffery J. Daar

25                                  Attorneys for Plaintiff
                                  ECODISC TECHNOLOGY AG

26

27

28

FIRST SUPPLEMENTAL COMPLAINT

1

## **JURY DEMAND**

2

3        EcoDisc AG hereby demands trial by jury on all issues triable to a jury.

4

5    DATED:  February 8, 2010            DAAR & NEWMAN

6                                        a Professional Law Corporation
                                         Jeffery J. Daar
7                                        Michael R. Newman

8
                                         By:
9                                            Jeffery J. Daar
                                         Attorneys for Plaintiff
10                                       ECODISC TECHNOLOGY AG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-41-

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa St., Suite 2300, Los Angeles, CA 90017-2565.

On February 18, 2010, I served the foregoing document(s) described as **FIRST SUPPLEMENTAL COMPLAINT FOR (1) VIOLATIONS OF THE SHERMAN ACT; (2) VIOLATIONS OF THE CARTWRIGHT ACT; (3) FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT; (4) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS; (5) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; (6) TRADE LIBEL; and (7) UNFAIR BUSINESS PRACTICES; DEMAND FOR JURY TRIAL** on the interested parties to this action who are listed on the attached Service List.

☒ **BY U.S. MAIL:** By enclosing the documents in a sealed envelope(s) or package(s) addressed to the persons at the addresses on the attached Service List, with postage thereon fully prepaid and:

    ☒ Deposited them with the United States Postal Service at Los Angeles, California.

    ☐ Placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Los Angeles, California.

☐ **BY HAND:** By personally delivering a true copy thereof in sealed envelope(s) to the persons listed on the attached Service List. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **BY TELECOPY:** Based on an agreement of the parties to accept service by fax transmission, by transmitting a true copy thereof via telecopy machine to the persons listed on the attached Service List. No error was reported by the telecopy machine that I used.

☐ **BY OVERNIGHT (Overnight Express®):** By placing a true copy thereof in a sealed envelope(s) or package(s) provided by Overnight Express®, addressed to the persons listed on the attached Service List, and with written instructions for "next-day" delivery. I placed the envelope(s) or package(s) to be collected for delivery at a regularly-utilized Overnight Express® drop box.

☐ **BY E-MAIL/ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, by transmitting a true copy thereof I caused the documents to be sent to the persons at the e-mail addresses listed on the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct of my own personal knowledge, and that I am employed in the office of a member of the Bar of this Court at whose discretion this service was made.

Executed on February 18, 2010 at Los Angeles, California.

_R/ D. Hayes_

-1-

PROOF OF SERVICE

1

## SERVICE LIST

2

3

4  KELLI L. SAGER                          *Counsel for Defendants*
   kellisager@dwt.com                      *DVD FORMAT/LOGO LICENSING*
5  ANDREW J. THOMAS                        *CORPORATION*
   ajthomas@dwt.com                        *and DVD FORUM*
6  DAVIS WRIGHT TREMAINE LLP
   865 S. Figueroa Street, Suite 2400
7  Los Angeles, CA 90017-2566
   Fax: (213) 633-6899

8  ROBERT P. PARKER                        *Counsel for Defendant*
   rparker@paulweiss.com                   *DVD FORMAT/LOGO LICENSING*
9  PAUL, WEISS, RIFKIND,                   *CORPORATION*
     WHARTON & GARRISON LLP
10 2001 K Street, NW
   Washington, DC 20006-1047
11 Fax: (202) 204-7350

12 CAREY R. RAMOS                          *Counsel for Defendant*
   cramos@paulweiss.com                    *DVD FORUM*
13 ROBERT B. DAVIS
   rdavis@paulweiss.com
14 PAUL, WEISS, RIFKIND,
     WHARTON & GARRISON LLP
15 1285 Avenue of the Americas
   New York, NY 10019-6064
16 Fax: (212) 492-0240

17

18

19

20

21

22

23

24

25

26

27

28

-2-

PROOF OF SERVICE

DAAR & NEWMAN, PLC