1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KELLI L. SAGER (SBN 120162)
  kellisager@dwt.com
ANDREW J. THOMAS (SBN 159533)
  ajthomas@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800
Facsimile:  (213) 633-6899

ROBERT P. PARKER (admitted *pro hac vice*)
  rparker@paulweiss.com
JOHN H. LONGWELL (admitted *pro hac vice*)
  jlongwell@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
Telephone: (202) 223-7339
Facsimile:  (202) 204-7350

Attorneys for Defendant
DVD FORMAT/LOGO LICENSING CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECODISC TECHNOLOGY AG, <br><br> Plaintiff, <br><br> v. <br><br> DVD FORMAT/LOGO LICENSING CORPORATION and DVD FORUM, <br><br> Defendants. | Case No. CV09 07875 MRP (AJWx) <br><br> **REPLY BRIEF IN SUPPORT OF DEFENDANT DVD FORMAT/LOGO LICENSING CORPORATION'S MOTION TO DISMISS FIRST SUPPLEMENTAL COMPLAINT [F.R.C.P. 12(b)(6)]** <br><br> Hearing Date:    March 22, 2010 <br> Hearing Time:    11:00 a.m. <br> Courtroom:         12 <br><br> Hon. Mariana R. Pfaelzer <br><br> Action Filed:  October 28, 2009 |

# Table of Contents

Page

INTRODUCTION ................................................................................................1

ARGUMENT........................................................................................................2

I.      THE *NOERR-PENNINGTON* DOCTRINE BARS PLAINTIFF'S
        CLAIMS ...................................................................................................2

        A.      The March 2009 and December 2009 Communications Are
                Protected.........................................................................................3

        B.      Plaintiff's "Sham" Allegation Fails ....................................................6

II.     THE COMPLAINT FAILS TO STATE A SHERMAN ACT CLAIM .... 11

III.    THE COMPLAINT FAILS TO STATE A LANHAM ACT CLAIM ...... 18

IV.     THE COURT SHOULD NOT GRANT LEAVE TO AMEND OR
        RETAIN JURISDICTION OVER THE STATE LAW CLAIMS .............21

CONCLUSION................................................................................. 23

# Table of Authorities

**Page(s)**

## CASES

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492, 108 S. Ct. 1931, 100 L. Ed. 2d 497 (1988) ........................... 17

*Avery Dennison Corp. v. Acco Brands, Inc.*,
    No. CV99-1877DT (MCX), 2000 WL 986995 (C.D. Cal. Feb. 22,
    2000) ................................................................................................................ 21

*Begala v. PNC Bank, Ohio, N.A.*,
    214 F.3d 776 (6th Cir. 2000) ......................................................................... 22

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................... 11, 12

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999) ....................................................................... 12

*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
    No. SACV09-0242(DOC), 2009 WL 3756559 (C.D. Cal. Nov. 5,
    2009) .................................................................................................................. 4

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
    95 F.3d 959 (10th Cir. 1996) ......................................................................... 21

*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*,
    567 F.3d 1084 (9th Cir. 2009) ....................................................................... 12

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ......................................................................... 20

*Foman v. Davis*,
    371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ................................... 21

*Hilton v. Hallmark Cards*,
    580 F.3d 1170 (9th Cir. 2003) ....................................................................... 21

*International Norcent Tech. v. Koninklijke Philips Elecs., N.V.*,
    No. CV-07-00043-MMM(SSx), 2007 WL 4976364 (C.D. Cal. Oct.
    29, 2007) ...................................................................................................... 11, 12

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
    No. C07-01057(MJJ), 2008 WL 686834 (N.D. Cal. Mar. 11,
    2008) .................................................................................................. 10, 21

*Matsushita Elecs. Corp. v. Loral Corp.*,
    974 F. Supp. 345 (S.D.N.Y. 1997) .................................................. 5

*Omega Envtl., Inc., v. Gilbarto*,
    127 F.3d 1157 (9th Cir. 1997) ...................................................... 15

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc.*,
    508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) ............... 6

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ..................................................... 21

*Sial v. Unifund CCR Partners*,
    No. 08-CV-0905-JM(CAB), 2008 WL 4079281 (S.D. Cal. Aug. 28,
    2008) ........................................................................................... 10

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................ 3, 4, 5

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) .................................................... 4, 8

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
    No. SACV 08-00529-JVS(MLGx), 2009 WL 1769444 (C.D. Cal.
    May 27, 2009) ............................................................................. 17

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) ...................................................... 15

*Wylie v. City of New Haven*,
    No. 3:02CV313(PCD), 2003 WL 23498386 (D. Conn. Feb. 27, 2003) ..... 13

**Introduction**

Although Plaintiff accuses DVD FLLC of distorting the complaint and making "straw man" arguments, the opposition brief ("Opp.") contains little of substance in response to DVD FLLC's arguments about the pleading's flaws.

First, Plaintiff cannot explain away the *Noerr-Pennington* doctrine, which immunizes all the conduct of DVD FLLC that is challenged in the complaint. Ninth Circuit law holds that the doctrine applies not only to the U-Tech lawsuit, but also to letters from DVD FLLC to licensees asserting DVD FLLC's rights under the license. Although Plaintiff invokes the narrow "sham" exception, the complaint does not plead facts sufficient to show that DVD FLLC's assertion of its rights was baseless or motivated by anticompetitive intent. Under *Noerr*, the complaint should be dismissed in its entirety, with prejudice.

Second, Plaintiff does not even hypothesize a coherent antitrust theory, much less one supported in sufficient detail by the allegations of the complaint. The complaint raises, and leaves unanswered, critical questions: How can EcoDiscs play on standard DVD players without using standard DVD formats? Who competes with whom in what market? What are the commercial uses of EcoDiscs? Why would DVD FLLC, whose economic incentive is to promote reliable DVD technology, wish to "suppress" such technology? Who conspired with whom and how? Without at least suggesting answers to these questions, the complaint fails to state an antitrust claim.

Third, in respect of the false advertising claim, Plaintiff offers no valid rebuttal to the point that DVD FLLC's communications to licensees are neither false nor advertising.

For these reasons, as explained below, the Supplemental Complaint should be dismissed.

**Argument**

I.   THE *NOERR-PENNINGTON* DOCTRINE BARS PLAINTIFF'S CLAIMS

The Supplemental Complaint dedicates five pages of allegations to DVD FLLC's lawsuit against U-Tech and clearly identifies the litigation as central to the Plaintiff's claims. *See* Supp. Cmpl. ¶¶ 60-66. Plaintiff alleges that "DVD FLLC filed its complaint against U-Tech . . . for the improper purpose of preventing U-Tech and other replicators from making EcoDiscs," *id*. at ¶ 63, and that "U-Tech did not start manufacturing EcoDiscs after being threatened *and then sued* by DVD FLLC." *Id*. at ¶ 66 (emphasis added). The Supplemental Complaint also alleges that Defendants "distributed copies of the DVD FLLC complaint . . . to replicators in the United States and elsewhere." *Id*. at ¶ 62.

In its opposition brief, EcoDisc attempts to run away from these allegations,[1] offering a tortured distinction between communications to replicators outside the lawsuit, which Plaintiff now says are the actionable "threats," and the lawsuit itself, which Plaintiff now says merely illustrates that "EcoDiscs were specifically in defendants' mind when defendants threatened all disc replicators." Opp. at 10, n.1. Plaintiff does not explain this point in light of the fact that DVD FLLC's complaint also named as a defendant another alleged replicator of 0.6mm discs that had no apparent relation to EcoDisc. *See* Decl. of Kaoro Saito, DVD FLLC's Motion to Dismiss, Ex. 1 ("Saito Decl."). But even if such a distinction made sense or was somehow relevant, it would be untenable. The fact remains that the Supplemental Complaint prominently identifies the U-Tech lawsuit as an example of DVD FLLC's alleged "efforts to suppress EcoDisc technology." Supp. Cmpl. ¶ 45. Indeed, Plaintiff challenges a single course of conduct – from the March 2009 warning letters, to the lawsuit, to the December 2009 offer of a Supplemental

---

[1] EcoDisc goes so far as to claim that "nowhere alleged in the FSC is any threat that includes a threat of being sued by either of the defendants." Opp. at 10.

Agreement – through which DVD FLLC sought to protect its right under the license agreement to prevent licensees from using licensed specifications to manufacture non-compliant 0.6mm discs.  Plaintiff cannot avoid the *Noerr-Pennington* doctrine by now claiming, contrary to the complaint, that Plaintiff's claim does not rest on the lawsuit, but only on the demand letters that preceded it and the settlement offer that followed it.

But even if the Court were to indulge the Plaintiff's mischaracterization of its complaint, this would afford no path around *Noerr-Pennington* immunity.  First, as the authority cited by DVD FLLC in its opening brief makes clear, the *Noerr-Pennington* doctrine protects not only litigation, but also litigation-related communications like the ones challenged here.  Second, Plaintiff has utterly failed to support its bare allegation that DVD FLLC's assertion of its rights under the license agreement was a "sham."

A.      The March 2009 and December 2009 Communications Are Protected.

The *Noerr-Pennington* doctrine extends beyond actual petitioning of the government, in the form of litigation or otherwise, to conduct that is "sufficiently related to petitioning activity."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006).  Extension of immunity beyond petitioning is necessary, the courts have held, in order to provide sufficient "breathing space" for an important First Amendment right.  *Id*. at 934.  In the context of litigation,  this means that immunity extends to "communications between private parties" regarding a claim or potential claim, whether or not litigation is pending or ever ultimately filed.  *Id*. at 935.  EcoDisc's assertion that "Noerr-Pennington immunity does not extend to actions occurring in an essentially private context," Opp. at 11, is simply wrong.

The Ninth Circuit has observed that extrajudicial communications regarding disputes are a "common, if not universal, feature of modern litigation," and that imposing liability for such communications would "render the entire litigation process more onerous" and therefore "impos[e] a substantial burden on a party's

1   ability to seek redress from the courts." *Sosa*, 437 F.3d at 936.  In *Sosa*, which

2   involved over 100,000 pre-suit demand letters sent by the defendant, the Ninth

3   Circuit made clear that immunity applies to any communication of a type "that

4   typically arises only in the context of contemplated petitioning activity." *Id*. at

5   936.

6        DVD FLLC's March and December 2009 communications to licensee-

7   replicators on the subject of 0.6mm discs plainly meet this test.

8        The March 2009 communication, although it did not expressly threaten

9   litigation, was an assertion of DVD FLLC's rights under the license agreement and

10  a warning to licensees that manufacturing 0.6mm discs under the license

11  agreement could result in litigation.  The letter warned that using the specifications

12  to make 0.6mm discs was "a serious breach" of the agreement and "may lead to

13  early termination."  Supp. Cmpl. ¶ 48.  This communication, therefore, left no

14  doubt that DVD FLLC would enforce the license agreement against any party who

15  violated it.  Indeed, Plaintiff's own characterization of the communication as a

16  "threat" supports the idea that the March 2009 letter "contemplated" litigation.

17  *Sosa*, 437 F.3d at 935.  *See also Theme Promotions, Inc. v. News Am. Mkt'g FSI*,

18  546 F.3d 991, 1008 (9th Cir. 2008) (applying *Noerr* to letters that "can be

19  interpreted as threats of some contemplated future lawsuit . . . for breach of

20  contract"); *California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, No. SACV09-

21  0242(DOC), 2009 WL 3756559, at *11 (C.D. Cal. Nov. 5, 2009) (applying *Noerr*

22  to insurer's claim denial letters that "intended to lay the foundation for

23  eventual recourse" to government review process).

24        Any doubt that the March 2009 letters were sent in "contemplation" of

25  litigation disappears in light of the fact that, where the warning was not heeded,

26  DVD FLLC *did* file a lawsuit.  As explained in great detail in the complaint, DVD

27  FLLC sued U-Tech (one of the recipients of the March 2009 letter, Supp. Cmpl.

28  ¶ 48) for breaching the license agreement by manufacturing 0.6mm discs that

incorporate DVD FLLC's specifications. *Id*. at ¶ 60. The complaint itself therefore confirms that DVD FLLC contemplated litigation when it issued the March 2009 letters to licensees. EcoDisc's contrary position is internally inconsistent: it makes no sense to complain that DVD FLLC wrongfully "threatened" licensees with revocation and wrongfully sued a licensee who did not capitulate to the "threat," and then to argue, in opposition to the motion to dismiss, that DVD FLLC's "threats" were not related to litigation.

The December 2009 communication, the complaint's other bookend to the allegations about the U-Tech lawsuit, is entitled to protection under the *Noerr-Pennington* doctrine for the same reason as the March 2009 letter. It, too, was a "communication[] between private parties" that was "sufficiently related" to DVD FLLC's claim under the license agreement. *Sosa*, 437 F.3d at 935. Issued in the wake of the U-Tech litigation, the letter proposed a way for DVD FLLC and licensee-replicators to avoid further dispute about 0.6mm discs. After consideration of the "various interests at issue in this matter," DVD FLLC "offer[ed]" a supplemental agreement that would provide a safe harbor for any replicator to produce 0.6mm discs so long as the product expressly disclaimed any association with standard DVD formats. Supp. Cmpl. ¶ 75. The communication was a classic offer of compromise, and therefore within a category of conduct that the Ninth Circuit has squarely held subject to *Noerr-Pennington* immunity. *See Sosa*, 437 F.3d at 936 (doctrine applies to "an invitation . . . to settle legal claims"); *see also Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (applying immunity for letters proposing settlement of dispute through "possible license arrangements").

In sum, EcoDisc's claims are based solely on conduct falling within the scope of *Noerr-Pennington* immunity. The complaint challenges a series of acts consisting of litigation and litigation-related communications. Each act was directed toward the goal of protecting DVD FLLC's intellectual property and other

1  rights under the license agreement.  Enforcement of these legal rights depended

2  entirely upon DVD FLLC's right of access to the courts.  As the Ninth Circuit has

3  held, the *Noerr-Pennington* doctrine protects that right regardless whether DVD

4  FLLC had to resort to litigation in each case. [2]

5         B.     Plaintiff's "Sham" Allegation Fails.

6         Plaintiff's complaint acknowledges the applicability of the *Noerr-*

7  *Pennington* doctrine by invoking its narrow "sham" exception, Supp. Cmpl. ¶ 63,

8  and the opposition brief (at 12-13) relies on this exception.  But the complaint does

9  not contain allegations sufficient to support the claim that DVD FLLC's assertion

10 of its rights was a "sham."

11        A liberal application of the "sham" exception, of course, would eviscerate

12 the *Noerr-Pennington* doctrine and contravene its important, constitutionally-based

13 protections.  The Supreme Court and the Ninth Circuit have therefore set a high bar

14 for "sham" allegations.  As explained in DVD FLLC's opening brief (at 9-10),

15 Plaintiff must plead with particularity facts sufficient to demonstrate that DVD

16 FLLC's claims were objectively baseless and that DVD FLLC, knowing as much,

17 nevertheless pursued its claims for an improper purpose.  *See Professional Real*

18 *Estate Investors, Inc. v. Columbia Pictures Indus. Inc.*, 508 U.S. 49, 60-61, 113 S.

19 Ct. 1920, 123 L. Ed. 2d 611 (1993).  Plaintiff's allegations do not meet this test.

20        Plaintiff states in conclusory fashion that DVD FLLC had "no bona fide

21 basis to threaten termination of the DVD FLLC License Agreement" and that DVD

22 FLLC's claims "patently have no merit."  Opp. at 12.  But just as with the

23 complaint's empty characterization of the U-Tech lawsuit as "baseless, false and a

24 sham," Supp. Cmpl. ¶ 63, Plaintiff's characterization of DVD FLLC's claim as

---

25 [2] The complaint also contains allegations about the notice that appeared on DVD
26 FLLC's web site contemporaneously with the March 2009 letter.  The online
27 posting essentially repeated the content of the letter and Plaintiff does not contend
28 that it has independent significance for *Noerr-Pennington* purposes.

"patently" meritless is not only unsupported by, but *contrary to*, the complaint. Accepting as true all of the allegations in the complaint, it is clear that DVD FLLC had (at a minimum) good reason to believe (1) that 0.6mm discs had quality problems that threatened the DVD brand and (2) that a licensee's manufacture of 0.6mm discs would involve misuse of DVD FLLC's specifications and therefore violate the license agreement.

First, as to the quality of 0.6mm discs and potential harm to the DVD brand, the complaint confirms that 0.6mm discs "may have playability and compatibility problems," Supp. Cmpl. ¶ 74, and that EcoDiscs (during the time period up to and after the filing of this lawsuit) carried a warning label. *Id*. at ¶ 52. Malfunction of DVD-like discs that are marketed as compatible with standard DVD players is a serious and legitimate cause for concern for DVD FLLC, whose mission is to promote interoperability, consumer acceptance of DVD technology, and brand goodwill. To the extent that consumers are likely to associate problematic 0.6mm discs with standard DVD products because they are marketed as the functional equivalent of standard DVDs, DVD FLLC had a legitimate motive for acting to enforce its right to prevent licensees from misusing the specifications for the standard DVD formats.

Second, the complaint demonstrates that DVD FLLC had good reason to believe that licensee-replicators were prohibited by the license agreement from manufacturing 0.6mm discs. The complaint incorporates by reference the license agreement, which prevents a licensee from making use of any licensed specification in order to manufacture a product that does not comply with each and every one of the specifications. *See* Saito Decl., Ex. 1, Arts. 2.8, 2.9. The complaint states that 0.6mm discs, including EcoDiscs, do not comply with the standard specifications and, therefore, are "outside the scope of the license." Supp. Cmpl. ¶¶ 28, 42. Finally, the complaint describes an EcoDisc as "provid[ing] the same playability as the standard DVD," *id.* at ¶ 38, having "the same data structure

1  and same data layer as a conventional DVD-5," *id*. ¶ 41, and being playable on

2  "*any* standard DVD player, computer, laptop or in-car entertainment drive." *Id*.

3  ¶ 52 (emphasis added).

4       With the EcoDisc's alleged physical similarities and purported compatibility

5  with standard DVD devices, it was (at a minimum) reasonable for DVD FLLC to

6  believe that licensees would necessarily make use of standard DVD specifications

7  to manufacture EcoDiscs or other 0.6mm discs.  The purpose of the specifications,

8  after all, is to enable the broad compatibility that Plaintiff claims for EcoDiscs.

9  The challenged communications were directed to licensees who, after all, license

10 the specifications in order to ensure that discs they manufacture are indeed

11 compatible with standard DVD devices.  The specifications, in other words, are the

12 cornerstone of compatibility between discs and players for commercial uses of

13 DVD technology.  In light of this fact, any reasonable licensor in DVD FLLC's

14 position would have concluded that licensee-replicators would use licensed

15 specifications when making 0.6mm discs. [3]

16      Plaintiff relies on an allegation that "[a]n EcoDisc does not use any of the

17 Format standards of the DVD Forum."  Supp. Cmpl. ¶ 42.  *See also* Opp. at 12

18 ("[T]he EcoDisc does not use any of the specifications or formats of defendants.").

19 Plaintiff also points to allegations about specifications available in the public

20 domain, implying (but not expressly stating) that licensee-replicators could make

21 use of these public-domain standards rather than DVD FLLC's intellectual

22 property.  Supp. Cmpl. ¶¶ 31-33; Opp. at 12 ("[T]here are specifications for DVDs

23 that are in the public domain.").  But a bare allegation that EcoDiscs do not use

24 _____

25 [3] Moreover, DVD FLLC's litigation against Plaintiff's licensee, U-Tech, resulted
   in a settlement—a factor that the Ninth Circuit has indicated weighs against a

26 finding of baselessness.  *See Theme Promotions*, 546 F.3d at 1008 ("The fact that
   this ongoing litigation settled suggests that the original suit was not objectively

27 baseless.").

28

1    DVD FLLC's specifications and a reference to a public-domain DVD format are

2    flatly insufficient to render DVD FLLC's assertion of rights under the license

3    agreement objectively baseless for purposes of the "sham" exception.

4          For one thing, the issue is not only whether *EcoDisc* uses DVD FLLC's

5    formats, but also whether licensee-replicators or their content providers do.  While

6    EcoDisc's basic technology for making unformatted 0.6mm optical discs may or

7    may not rely on the specifications, EcoDisc does not allege (and DVD FLLC is

8    unaware) how replicators and content providers could, without using the DVD

9    FLLC specifications, make EcoDiscs with video content that would play on

10   standard DVD players.  The ECMA standard, for example, is not alleged to include

11   formatting for DVD video playback, and DVD FLLC is unaware of any other

12   source of such formatting that is compatible with standard DVD players.  Indeed,

13   nowhere in the complaint does Plaintiff specifically allege or explain how 0.6mm

14   discs can play video on standard DVD players without using standard DVD

15   formats.

16         By the same token, it is not enough simply to allege the *existence* of a

17   public-domain DVD format, without also alleging that EcoDisc replicators actually

18   could and would use only the public-domain format to offer video playback.

19   Nowhere in the complaint does Plaintiff allege that the ECMA format would allow

20   replicators to produce 0.6mm discs that played video on standard DVD players.

21   Nowhere does Plaintiff allege that it planned to restrict replicators of EcoDiscs to

22   producing discs with functions limited to whatever is supported by the ECMA

23   standard, or that the ECMA standard provides a viable commercial alternative to

24   any of DVD FLLC's formats. [4]  In fact, although the complaint cites the ECMA

25   standard, it does not expressly allege that any EcoDisc product uses it.

26

27   ───────────────

28   [4] The complaint alleges only that ECMA provides a standard for "physical
     characteristics" and "volume and file structure."  Supp. Cmpl. ¶ 32.  Such

1    Finally, even if Plaintiff were able sufficiently to allege that neither it, nor

2    any content provider nor replicator, would use standard DVD specifications in

3    producing and marketing 0.6mm discs, that would not make DVD FLLC's

4    communications to licensees objectively baseless at the time they were made.

5    Nowhere in the complaint does EcoDisc allege that a reasonable licensor *should*

6    *have known* that, despite all indications to the contrary, licensees were interested

7    solely in making 0.6mm discs based entirely upon public-domain formats

8    (assuming that is even possible). [5]

9    Without any allegation that replicators could and would make 0.6mm discs

10   without use of the licensed specifications, and that DVD FLLC knew or should

11   have known as much when it asserted its claims, the complaint fails to satisfy the

12   heightened standard for pleading the "sham" exception to the *Noerr-Pennington*

13   doctrine.  Plaintiff does not dispute that, if applicable, *Noerr-Pennington* immunity

14   shields DVD FLLC from liability under each of the legal bases asserted in the

15   complaint.  Therefore, and because the circumstances clearly demonstrate that

16   DVD FLLC's assertion of its rights against licensees was, at a minimum,

17   objectively reasonable, the complaint should be dismissed in its entirety, with

18   prejudice. [6]

19

20   standards would not appear to address formatting for video playback and other
     commercial uses of DVD discs.

21

22   [5] Plaintiff argues that injunctions against DVD FLLC entered by a German court
     are evidence that DVD FLLC's assertion of its rights was a "sham."  Opp. at 12-

23   13.   But the injunctions were issued without notice to DVD FLLC or a hearing,
     Supp. Cmpl. ¶¶ 59, 77, and therefore have no bearing on the merits of DVD

24   FLLC's conduct.  Plaintiff's citation (at 13) to *Sial v. Unifund CCR Partners*, No.

25   08-CV-0905-JM(CAB), 2008 WL 4079281 (S.D. Cal. Aug. 28, 2008), is
     perplexing.  The case says nothing about whether an order (from a foreign court or

26   otherwise) procured without notice and a hearing is evidence of a "sham."

27

28   [6] Because Plaintiff's antitrust claim is based solely on conduct that is protected
     under *Noerr* as a matter of law, leave to amend would be futile.  *See, e.g., Korea*

## II.    THE COMPLAINT FAILS TO STATE A SHERMAN ACT CLAIM

In its opening brief, DVD FLLC demonstrated that the complaint fails to satisfy the *Twombly* pleading standard on several key elements of a Sherman Act claim.  Plaintiff meets these arguments at the highest level of generality, glossing over the particular deficiencies DVD FLLC identifies.  As the Supreme Court has emphasized, such generalities will not suffice to entitle Plaintiff to unleash the hounds of costly discovery in a "potentially massive factual controversy."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

First, Plaintiff fails to distinguish the *Norcent* case, in which Judge Morrow dismissed another antitrust complaint also based on alleged "threat[s]" by DVD FLLC to terminate licensees who manufactured non-compliant DVD products.  *See International Norcent Tech. v. Koninklijke Philips Elecs., N.V.*, No. CV-07-00043-MMM(SSx), 2007 WL 4976364, at *4 (C.D. Cal. Oct. 29, 2007).  Although Plaintiff claims that its complaint is more specific, Plaintiff ignores that the Court had before it and considered, under the incorporation by reference doctrine, evidence of specific alleged "threats" appearing on DVD FLLC's website that are substantially similar to the online postings that Plaintiff attacks here.  *Id.*, at *12, n.77.  The Court found "nothing improper" about a posting stating that "[t]he use of the DVD Format for products that do not conform to the Specifications is a violation of the [license agreement and] . . . may lead to termination[.]"  *Id.*  This is nearly verbatim to one of the statements identified in the Plaintiff's complaint.  *See* Supp. Cmpl. ¶ 49 ("To use DVD Formats for products that do not conform to the Specifications is NOT admissible … Licensees are warned that manufacturing

---

*Kumho Petrochemical v. Flexsys Am. LP*, No. C07-01057(MJJ), 2008 WL 686834, at *6 (N.D. Cal. Mar. 11, 2008) (dismissing antitrust theory under *Noerr* without leave to amend).

1  non-compliant DVD Products could lead to termination of the License.") (quoting

2  DVD FLLC website).  Thus, Plaintiff's argument (Opp. at 14) that *Norcent* is

3  "anything but analogous" is mystifying.

4       *Norcent* provides an excellent example, in essentially the same factual and

5  legal setting, of the need for specific, coherent, and detailed allegations that will

6  enable the Court to distinguish legitimate standard-setting and licensing from

7  anticompetitive conduct.  Although the plaintiff in *Norcent* advanced the same

8  antitrust theory as Plaintiff here, the district court, after a thorough review of

9  several iterations of the complaint, held that Plaintiff had not sufficiently alleged

10  facts to support its claim that the defendants were doing anything other than

11  legitimate standard-setting and enforcement.  That same flaw plagues Plaintiff's

12  complaint.  Although Plaintiff alleges that DVD FLLC had no contractual right to

13  prevent licensees from making EcoDiscs, it has failed, for the reasons explained

14  above, to support that allegation with an explanation of how 0.6mm discs can play

15  formatted content on standard DVD players without using the protected

16  specifications.  Because Plaintiff has failed to provide sufficient factual allegations

17  that suggest "more than the mere possibility" of anticompetitive conduct,

18  *Twombly*, 550 U.S. at 555, the complaint must be dismissed.[7]

19       Second, Plaintiff has failed sufficiently to identify the relevant product

20  market.  Because it is impossible to evaluate any claim of harm to competition

21  without understanding the contours of the relevant market, the law requires a

22  plaintiff to define the relevant market by specific reference to "the area of effective

23  competition in which buyers … can find alternative sources of supply [and in

24

---

25  [7] Plaintiff repeatedly claims that DVD FLLC has "violated the DVD Forum's

26  Antitrust Guidelines" (Opp. at 6, 16), which caution members against discussing
their individual business strategies or other commercially sensitive information.

27  These Guidelines have nothing to do with DVD FLLC's ability to communicate
with licensees about obligations under the license agreement.

28

1  which] there are no other goods or services that are reasonably interchangeable."

2  *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir.

3  1999).  In other words, the complaint must demonstrate that the parties offer

4  products or services that are close enough substitutes for competition to exist

5  between them, and must identify a market that includes all such products.  *See*

6  *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 567 F.3d 1084, 1094-95

7  (9th Cir. 2009) (explaining requirement of market definition by reference to

8  reasonable interchangeability of products and substitutes).

9      The Supplemental Complaint defines the relevant market as "comprised of

10  the manufacture and sale of 1.2mm DVDs and EcoDiscs."  Supp. Cmpl. ¶ 79.  In

11  response to DVD FLLC's argument (Motion at 14) that this cannot be the relevant

12  market because neither EcoDisc nor DVD FLLC manufactures or sells discs,

13  Plaintiff now seeks a "do-over" and defines the market in its opposition brief (Opp.

14  at 17) as "the licensing of technology for the making of standard DVDs and

15  EcoDiscs."  Only a complaint that is woefully lacking in specifics would enable

16  the plaintiff to follow a moving-target market definition strategy.  Of course, this is

17  improper – a plaintiff cannot amend its complaint by way of an opposition to a

18  motion to dismiss.  *See, e.g., Wylie v. City of New Haven*, No. 3:02CV313(PCD),

19  2003 WL 23498386, at *2 (D. Conn. Feb. 27, 2003) ("Memoranda filed in

20  opposition to motions to dismiss are not opportunities to supplement the

21  allegations in the complaint.").  But even setting that aside, Plaintiff's new market

22  definition is no better than the first.

23      If Plaintiff means to suggest that it licenses technology that competes with

24  DVD FLLC's formats, this contradicts the complaint.  Indeed, EcoDisc does not

25  claim to license any content-formatting specifications at all, instead implying (but

26  not expressly alleging) that replicators could rely on public-domain formatting.

27  This suggests that EcoDisc licenses technology relating only to the physical

28  dimensions of optical discs (in particular, how to make a 0.6mm disc that, if

1  properly formatted using some technology obtained elsewhere, will play in a

2  standard DVD player).[8] If this is true, then DVD FLLC and EcoDisc do not

3  compete in the format licensing market at all.

4      If, on the other hand, Plaintiff means to suggest that it licenses technology

5  that can be used (in conjunction with public domain formats) to create products

6  that compete *downstream* with products made under a DVD FLLC license, then

7  the complaint fails to identify the boundaries of the downstream market.

8  Depending on the facts, that market might be broad enough to include a wide

9  variety of digital storage media (from flash memory drives to hard and floppy discs

10 to optical media).  Or perhaps it is limited to various forms of optical storage

11 media, such as CDs, DVDs, Blu-ray discs, and HD-DVDs.  Or perhaps it is

12 narrower still, focusing only on DVDs, or on some subset of DVD technology,

13 such as DVD Video.  At a bare minimum, one would expect the relevant market to

14 include other 0.6mm discs as well as EcoDiscs.  *But see* Supp. Cmpl. ¶ 71 (market

15 limited to "1.2mm DVDs and *EcoDiscs*").  From the complaint one can only

16 wonder.  The scope of the relevant market depends on factual allegations regarding

17 whether products are adequate substitutes to perform a given function.  Because

18 the complaint does not identify the particular uses for which EcoDiscs are

19

20

21  [8] The Supplemental Complaint states that EcoDisc's technology is the subject of
"six U.S. patent applications."  Supp. Cmpl. ¶ 39.  Although these applications are

22 not specified in the complaint, a search of public databases reveals at least three

23 U.S. patent applications that have been assigned to EcoDisc AG.  *See* U.S. Pat.
App. 20080115156 (filed May 15, 2008), *available at* 2008 WL 2053746; U.S.

24 Pat. App. 20080115159 (filed May 15, 2008), *available at* 2008 WL 2053909;

25 U.S. Pat. App. 20090040916 (filed Feb. 12, 2009), *available at*; 2009 WL 337673.
Each application appears to relate to the physical aspects of optical discs, not

26 content formatting.  As relevant here, Plaintiff does not allege that its patent

27 applications include technology directed to a viable video format operable on a
standard DVD player.

28

intended,[9] it is impossible to tell which, if any, of the various types of standard DVD discs or other products might compete with it.

These problems stem directly from the lack of specificity in the complaint regarding the relevant market.  Because Plaintiff has not precisely explained the market for its product or why DVD FLLC's technology or standard DVDs are adequate substitutes, the complaint should be dismissed.

Third, Plaintiff does not persuasively rebut DVD FLLC's argument (Motion at 15-16) that the complaint fails adequately to allege market foreclosure.  Plaintiff repeats the allegation of its complaint that "virtually all, if not all" disc replicators have license agreements with DVD FLLC.  Supp. Cmpl. ¶ 36.  Even if this is true, the complaint does not allege that a significant number of replicators have refused to do business with EcoDisc.  (U-Tech is the only example, and it has a license agreement with both DVD FLLC and EcoDisc.)[10]  Nor does the complaint explain how, if replicators will not do business with EcoDisc, "tens of millions of EcoDisc DVDs have been produced and distributed" since 2007.  *Id.* at 41.  Finally, the complaint does not allege that it would be difficult for Plaintiff to work with new replicators or any who might choose not to renew the DVD FLLC license, or even to manufacture EcoDiscs itself.  *See, e.g., Omega Envtl., Inc., v. Gilbarto*, 127 F.3d 1157, 1164 (9th Cir. 1997) (rejecting claim of substantial foreclosure where plaintiff failed to show barriers to new entry).  In the absence of detailed

---

[9] The complaint makes only passing reference to possible uses for the EcoDisc in marketing and promotion.  *See* Supp. Cmpl. ¶ 41 (alleging that EcoDiscs have been "distributed in mass quantities with magazines and newspapers").

[10] Even this single claim of foreclosure may be inaccurate.  At least according to U-Tech's website, the company is marketing EcoDiscs.  *See* http://www.utechusa.com/products/pages/ecodisc.aspx.

1   allegations about the extent to which Plaintiff is alleged to be foreclosed from the

2   relevant market, the complaint fails to state a claim based on such foreclosure.[11]

3          Fourth, Plaintiff has failed to explain why it would be economically rational,

4   and therefore "plausible in light of basic economic principles," *William O. Gilley*

5   *Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009), for DVD

6   FLLC to "suppress" Plaintiff's efforts to license EcoDiscs.  Plaintiff argues in its

7   opposition brief (at 19) that if it were successful in "penetrat[ing] the market for

8   discs that can be played on DVD players and drives," then fewer standard DVDs

9   would be produced, and the demand for licensing standard DVD technology would

10   be diminished.  There are two major flaws in this logic.

11          For one thing, as explained in the complaint, DVD FLLC (unlike EcoDisc)

12   does not earn licensing revenues based on the number of discs produced under a

13   license.  Instead, it charges a flat fee.  Supp. Cmpl. ¶ 28.  The only way that DVD

14   FLLC's revenues would suffer, therefore, is if a replicator abandoned standard

15   DVDs altogether in favor of making EcoDiscs.  Assuming it is even possible to

16   make commercially viable EcoDisc products without DVD FLLC's specifications,

17   the complaint does not allege that any replicator would choose to make EcoDiscs

18   without also making standard DVDs.  Without such an allegation, the complaint

19   fails to allege how EcoDisc's entry into the market would threaten DVD FLLC's

20   licensing revenues.

21          For another thing, "suppressing" technology for discs that are compatible

22   with standard DVD devices and otherwise reliable would be against the basic

23   mission of DVD FLLC, which seeks to promote, not suppress, the use of DVD

24   technology.  Supp. Cmpl. ¶ 25.  Its only interest in suppressing anything is to

25

26   _____

27   [11] In light of the complaint's allegation about the Supplemental Agreement, which
    expressly permits replicators to manufacture 0.6mm discs under the license, there
28   can be no claim of current foreclosure.

protect the DVD reputation by ensuring that unreliable discs do not enter the market.  Thus, there is no rational economic basis for EcoDisc's theory of competitive harm.[12]

Fifth,  Plaintiff has failed to allege an actionable conspiracy.  In response to DVD FLLC's argument (Motion at 18) that because the DVD Forum and DVD FLLC are not competitors, they are incapable of conspiring within the meaning of the Sherman Act, Plaintiff now asserts (Opp. at 20) that the real conspiracy is among the "individual shareholders" of the defendants, i.e., the consumer electronics and entertainment companies that sponsor the DVD standard-setting process.  Plaintiff states that these members have "strong powers" to control the actions of the defendants, and cites various cases involving abuse of an industry-standard setting process.[13]  Plaintiff's theory, it now says, is that "certain of the ten shareholders of DVD FLLC have co-opted the DVD Forum in an anticompetitive way in order to prevent EcoDisc AG from having access to the disc replicators in the United States."  Opp. at 21.

---

[12] Plaintiff makes much of DVD FLLC's alleged statement that it "strive[s] to contain the non-compliant products [EcoDisc] from appearing in the market." Supp. Cmpl. ¶ 45 (internal citations omitted); Opp. at 18, 19.  But as with all of Plaintiff's allegations regarding DVD FLLC's purported effort to "suppress" EcoDiscs, this statement innocuously refers to DVD FLLC's legitimate mission of preventing licensees and others from selling adulterated products that improperly use the standard DVD formats or logo, and therefore threaten the DVD brand.

[13] Plaintiff's complaint bears no resemblance to antitrust cases in which a defendant is alleged to have targeted a competitor through control of an ostensibly neutral party.  See, e.g., Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 108 S. Ct. 1931, 100 L. Ed. 2d 497 (1988); TYR Sport, Inc. v. Warnaco Swimwear, Inc., No. SACV 08-00529-JVS(MLGx), 2009 WL 1769444 (C.D. Cal. May 27, 2009).  There is no allegation that any competitor of Plaintiff has abused its position within a "neutral" organization in order to harm competition.  The only alleged competitor of Plaintiff is DVD FLLC, which is alleged to take direction from the DVD Forum, not the other way around.

1    But the problem with Plaintiff's assertion that the defendants are mere

2    pawns in a game orchestrated by other companies is that it does not appear in the

3    complaint.  True, the complaint identifies various members of the DVD Forum and

4    shareholders of DVD FLLC and contains a single, boilerplate allegation that

5    "Defendants DVD Forum and DVD FLLC have, along with certain of their

6    respective members and shareholders, taken intentional acts in order to suppress"

7    EcoDiscs.  Supp. Cmpl. ¶ 45.  But *nowhere* does it allege that any particular one or

8    group of these non-defendants engaged in an antitrust conspiracy, much less

9    describe with particularity any agreement or other acts of conspiracy by this

10   unnamed entity or group.  Rather, the complaint attacks the "threats" and alleged

11   misstatements of DVD FLLC and alleges only that it has conspired with the DVD

12   Forum.  Supp. Cmpl. ¶ 79 (alleging "concert of action among the DVD Forum and

13   DVD FLLC").  Because Plaintiff does not now even attempt to argue that these

14   defendants are capable of conspiring, the complaint should be dismissed.

15   **III.   THE COMPLAINT FAILS TO STATE A LANHAM ACT CLAIM**

16   As explained in DVD FLLC's opening brief (Motion at 19-23), Plaintiff has

17   failed to plead with particularity facts sufficient to support its claim that DVD

18   FLLC made any false statement in commercial advertising in violation of the

19   Lanham Act.  In its opposition brief (Opp. at 22-25), Plaintiff repackages its

20   allegations, but does not show that they satisfy Rule 9(b).

21   First, although Plaintiff now identifies the challenged portions of DVD

22   FLLC's communications to licensees in March and December 2009, its allegations

23   purporting to explain why such statements are false still fall short.  The challenged

24   statements appear to fall into two categories: (1) statements that manufacturing

25   0.6mm discs would violate the license agreement and (2) statements (or

26   "implications") that 0.6mm discs have playability problems.  *See* Opp. at 23.

27   Plaintiff says that statements in the first category were false to the extent that

28   EcoDiscs do not use the standard DVD specifications and fall outside the license.

1    As an initial matter, fairly read, DVD FLLC's communications to licensees

2    regarding 0.6mm discs did not state or imply that manufacture of a 0.6mm disc that

3    did not make use of any licensed specification would subject a licensee to

4    termination.  By citing the relevant language of the agreement that prevents

5    licensees from using the specifications to make non-compliant products, DVD

6    FLLC clearly was reminding replicators that they could not produce 0.6mm discs

7    *under the license*.  DVD FLLC was not attempting to suggest that its licenses

8    somehow prevented licensees from making non-licensed products.  As Plaintiff's

9    own allegations about Blu-ray and DVD+RW show, DVD FLLC has never taken

10   the position that the license agreement gives DVD FLLC any right to prevent

11   replicators from making discs that do not use any licensed specification. [14]

12         Assuming for the sake of argument, however, that DVD FLLC's statements

13   could be read to imply that manufacture of any 0.6mm disc violates the license,

14   Plaintiff has failed sufficiently to allege that this is false.  The statement is not false

15   if 0.6mm discs that play on standard DVD equipment necessarily incoporate DVD

16   FLLC formatting.  As noted above, Plaintiff alleges in a single sentence that "an

17   EcoDisc does not use" any licensed format, and Plaintiff points to a public-domain

18   standard.  But that is not enough.  Plaintiff has not explained how a product that

19   does not use licensed formats can "provid[e] the same playability as the standard

20   DVD," Supp. Cmpl. ¶ 38, have "the same data structure and same data layer as a

21   conventional DVD-5," *id*. ¶ 41, and be playable on "*any* standard DVD player,

---

[14] Plaintiff cites DVD FLLC's failure to assert license rights against replicators of
Blu-ray and DVD+RW discs as purported evidence of improper motive. *E.g.*,
Opp. at 16-17.  But with regard to DVD+RW, as Plaintiff acknowledges (at 17),
DVD FLLC *has* insisted that replicators disclaim any association with the standard
DVD formats.  And the complaint fails to allege, unlike with 0.6mm discs, that
DVD FLLC has any reason to believe that Blu-ray or DVD+RW discs rely on
DVD FLLC formats.  Such discs are not alleged, for example, to be compatible
with standard DVD devices.

computer, laptop or in-car entertainment drive." *Id*. ¶ 52 (emphasis added).  To DVD FLLC's knowledge, such compatibility can be achieved only by virtue of the licensed specifications – indeed it is their very reason for being, and the basis for their adoption by, as Plaintiff puts it, "virtually all, if not all" replicators.  In the absence of an express allegation that a replicator can produce a standard DVD-compatible 0.6mm disc that performs a standard function like video playback but does not contain any DVD FLLC formatting, Plaintiff has failed to explain with the necessary specificity why DVD FLLC's alleged assertion of an unqualified right to prevent replicators from producing 0.6mm discs is false.

As for the veracity of DVD FLLC's statement (or "implication") that 0.6mm discs have playability problems, the Court need look no further than the complaint. As explained in DVD FLLC's opening brief (Motion at 20-21), the complaint alleges that, at least at the time of the March 2009 communication, EcoDiscs were sufficiently problematic to warrant a warning label about their use in certain drives. And although the complaint alleges that EcoDisc stopped using this label in November 2009, it also acknowledges that other 0.6mm discs may continue to have problems.  Supp. Cmpl. ¶ 75.  Therefore, to the extent that DVD FLLC's December 2009 letter to replicators "implied" that  problems with 0.6mm discs existed, it was true.

Plaintiff's argument appears to be that the "implication" of playability problems in the December 2009 letter misleadingly extended to EcoDisc, which (just the previous month) allegedly had resolved the problems underlying the warning label.  Surely this is too thin a reed upon which to base a Lanham Act claim.  The December 2009 letter, after all, did not say that all (or any) 0.6mm discs were dangerous or faulty.  It was a proposal by which DVD FLLC sought to balance a licensee's potential interest in making 0.6mm discs with its own concerns about being associated with technology that it had not approved.  DVD FLLC did not spell out in the letter the reasons for its concerns or why it had not

approved 0.6mm discs, and there were any number of potential reasons.  A letter in which DVD FLLC sought license conditions aimed at disassociating itself from a product that it did not develop or endorse does not "necessarily imply" anything about the product, much less rise to the level of a specific false statement under Rule 9(b).

Second, as explained above, Plaintiff has failed to show that it is "in commercial competition with" DVD FLLC as required under the Lanham Act's commercial advertising requirement.  *See, e.g., Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).  Nor does Plaintiff explain how the communications at issue could possibly meet the Ninth Circuit's test for "commercial speech" as that which "does no more than propose a commercial transaction."  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).  *See also Hilton v. Hallmark Cards*, 580 F.3d 874, 885 n.7 (9th Cir. 2009) ("[C]ommercial speech is best understood as speech that merely advertises a product or service for business purposes.") (*quoting Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996)).  Under this authority, DVD FLLC's communications to licensees were not "advertising."

Plaintiff fails to distinguish *Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99-1877DT(MCX), 2000 WL 986995, at *7 (C.D. Cal. Feb. 22, 2000), which holds that communications like the ones at issue here are not "commercial advertising" within the meaning of the Lanham Act.  Just as in *Acco*, which involved letters from the defendant's lawyer to the plaintiff's customers, the statements at issue here concerned a potential dispute (and possible resolution) and not a "marketing or sales pitch."  Plaintiff has no answer for this authority, except to repeat, without explanation, that it is "very different," "easily distinguishable," and "entirely different."  Opp. at 24-25.  Repeating this does not make it so.[15]

---

[15] Plaintiff's assertion (Opp. at 11) that the alleged "threats by DVD FLLC were essentially done in a private, not public, context between DVD FLLC and its

IV.    THE COURT SHOULD NOT GRANT LEAVE TO AMEND OR RETAIN
       JURISDICTION OVER THE STATE LAW CLAIMS

Dismissal of the complaint should be with prejudice.  As noted above, because the conduct about which Plaintiff complains is all related to DVD FLLC's enforcement of its legal rights under the license agreement, the *Noerr-Pennington* doctrine presents an insurmountable hurdle to Plaintiff's claims and amendment would be futile.  *See Korea Kumho,* 2008 WL 686834, at *6; *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

But even if the complaint is dismissed on other grounds, Plaintiff should not be granted leave to amend.  In response to Plaintiff's original complaint, DVD FLLC answered and filed a motion for judgment on the pleadings, making many of the same arguments contained in the present motion.  With notice of the defects of its pleading, Plaintiff decided not to seek leave to amend, but instead filed the Supplemental Complaint.  Now Plaintiff argues that it should be afforded yet another bite at the apple, without having proffered any allegations that would cure the deficiencies in the Supplemental Complaint.  This is improper.  *See Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000) (plaintiff is "not entitled to an advisory opinion from the Court informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies") (emphasis omitted).

Plaintiff argues (Opp. at 25) that if the motion to dismiss is granted with prejudice, the Court should "retain jurisdiction over the state claims in light of the difficulty of obtaining service of process on defendants in Japan or condition any dismissal of the state claims to [sic] defendants agreeing to accept service of any state court lawsuit without further compliance with the formalities of the Hague Convention."  Plaintiff cites no bar to refiling in state court, and a plaintiff's desire

licensees" is also hard to square with its claim that these "threats" constituted commercial advertising.

to avoid the cost of service of a state lawsuit is no answer to the presumption that a
district court should not, after dismissing all federal claims, continue to exercise
supplemental jurisdiction over claims arising under state law.  *See* Motion at 24.

## **Conclusion**

For the foregoing reasons, the supplemental complaint should be dismissed
in its entirety, with prejudice, pursuant to Rule 12(b)(6).


DATED:  March 8, 2010

DAVIS  WRIGHT TREMAINE  LLP
KELLI L. SAGER
ANDREW J. THOMAS

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
ROBERT P. PARKER
JOHN H. LONGWELL


By: _____/s/Andrew J. Thomas_____
                           Andrew J. Thomas

Attorneys for Defendant DVD
FORMAT/LOGO LICENSING
CORPORATION